[Civ. No. 28489. First Dist., Div. Two. Mar. 28, 1972.]

VANGUARD RECORDING SOCIETY, INC., et al., Plaintiffs and Respondents, v.
FANTASY RECORDS, INC., et al., Defendants and Appellants.

412

## COUNSEL

Henry C. Krivetsky for Defendants and Appellants.

Garry, Dreyfus, McTernan & Brotsky, Francis J. McTernan and Siegfried Hesse for Plaintiffs and Respondents.

## OPINION

**ROUSE, J.**—Plaintiffs Vanguard Recording Society, Inc., Vanguard Record Sales Corp., (hereafter collectively referred to as "Vanguard") and Joan Baez, brought suit against Fantasy Records, Inc.; Richard Tognazzini; and Max Weiss, Milton Weiss and S. S. Weiss, individually and doing business as Circle Record Company, to obtain damages and an accounting. The gist of the complaint was that defendants, in knowing violation of certain exclusive recording contracts between plaintiffs Vanguard and plaintiff Baez, had produced and distributed a poor quality and tasteless record of an early performance by Baez. Plaintiffs alleged that defendants' conduct had damaged Baez' reputation and had impaired the value of her recording contract with Vanguard. It was further alleged that Vanguard had been compelled to incur substantial attorney's fees in order to enjoin and restrain sales of defendants' record. Plaintiffs sought damages and an accounting of defendants' profits from the sale of the record.

Defendants, by way of answer, admitted the production and distribution of the Baez record, but denied that plaintiffs were entitled to damages or an accounting. Defendants affirmatively alleged that plaintiffs' cause of action had been litigated between the parties to final judgment in a prior action.

Plaintiff Baez was dismissed as a plaintiff, at her request, prior to trial.

Following a nonjury trial, the court made findings of fact as follows: that at all times since July 3, 1960, Baez had contracts with plaintiffs Van-

guard (or their predecessor in interest) for the exclusive manufacture and sale by said corporations of phonograph records of Baez performances; that during the months of April and May 1964, defendants contracted among themselves to lease a 1958 tape recording made by Baez and to manufacture, distribute and sell phonograph records made from said tape recording; that defendants knew of the exclusive recording agreements between Baez and plaintiffs Vanguard and that defendants also knew that they had no right, title or interest in said tape recording and no right to reproduce and sell phonograph records made from said tape recording; that defendants nevertheless produced and distributed to the public for sale more than 40,000 phonograph records entitled "Joan Baez in San Francisco," made from the 1958 tape recording; that the 1958 tape recording was made at a time when Baez was an immature and inexperienced singer and guitarist and that said recording did not fairly represent her present ability and style, which are unique, distinctive and creative; that the production and distribution of defendants' record had injured and damaged Baez' reputation and the sales of her current records made and released by plaintiffs Vanguard; that plaintiffs Vanguard, in order to protect their business and their exclusive contracts with Baez, were required to notify record distributors and dealers throughout the country that defendants had no right or authority to produce or sell "Joan Baez in San Francisco," and that plaintiffs were also required to retain counsel in various cities to take necessary action to enjoin and restrain sales of said record; that plaintiffs expended the sum of $17,500 in attorney's fees and costs in seeking injunctions against parties other than defendants to halt the sale of defendants' record; that plaintiffs had sustained total damages in the amount of $25,000 as a result of defendants' wrongful conduct. The court also found that Baez had brought a prior action for a permanent injunction against defendants in the San Francisco Superior Court and had prevailed in said action; that judicial notice of the findings in said action would be taken and held to be binding upon defendants.

A judgment in the amount of $25,000 was entered in favor of plaintiffs and against all defendants. All defendants thereafter moved for a new trial. The court granted a new trial as to defendants Milton Weiss and Richard Tognazzini only. The remaining defendants, Fantasy Records, Inc., S. S. Weiss, individually doing business as Circle Record Company, and Max Weiss, were denied a new trial; they filed a timely notice of appeal from the judgment.[1]

■ Defendants' first contention on appeal is that the bringing of the

---

[1]Defendants also purport to appeal from the order denying their motion for new trial, which order is nonappealable.

instant action was barred by the doctrine of res judicata because plaintiffs controlled the prior injunctive action brought by Baez against defendants and were in privity with her. Defendants assert that Baez (and plaintiffs, as her privies) could have sought damages as well as injunctive relief in said action and were not entitled to split their cause of action against defendants and bring one suit for injunctive relief and a later suit for damages arising from the same basic wrong. Defendants claim that when the San Francisco Superior Court rendered a judgment permanently enjoining defendants from manufacturing, selling or distributing the Baez record, plaintiffs lost their right to bring any further suit against defendants arising from the manufacture and sale of "Joan Baez in San Francisco." Defendants further assert that since their principal defense at the trial was that the bringing of the instant action was barred by the prior injunctive action, the trial court in the instant case was required to make a finding of fact on the privity question and to render a conclusion of law relative to the applicability or nonapplicability of the doctrine of res judicata. Defendants contend that the court erred because it failed to resolve these issues in its findings or conclusions of law. However, defendants take the position that the evidence on the privity issue was undisputed and that this court should exercise its power under Code of Civil Procedure, section 909 (formerly § 956a) and make its own finding that plaintiffs were in privity with Baez.

Under California law, it is clear that if plaintiffs themselves had been actual parties in the prior injunctive action brought in the San Francisco Superior Court, they would not be entitled to bring the instant action for damages against defendants. In the early case of *Abbott* v. *The 76 Land and Water Co.* (1911) 161 Cal. 42 [118 P. 425], plaintiff's assignor had brought suit to obtain specific performance of a contract to convey certain property. He prevailed in that action and then assigned his claim to plaintiff, who brought a second action to obtain damages arising from defendant's breach of the contract to convey the property. Our Supreme Court held that the second action was barred because plaintiff's assignor could have sought damages as well as specific performance in the first action and was not entitled to split his cause of action against defendant. The court stated: "[U]nder elementary principles, he was bound to obtain all his relief on account of the breach in one action, and could not recover part in one and part in another. If he had brought his action at law for damages, thereby treating the contract as at an end, a judgment therein awarding him damages would have been conclusive on him as to the amount of damages sustained by reason of the breach, and a bar to any action for further damage on account thereof. Resorting as he did to an action in equity to compel specific performance of the contract, instead of an action at law for damages, the decree in his favor of the court having the power to

give him all relief that he was entitled to on account of the breach is likewise conclusive and a bar to any subsequent action for relief based on the same contract. This is the necessary result of the application of the well settled principle that an entire claim arising either upon a contract or from a wrong cannot be divided and made the subject of several suits. In such a case it is no warrant for a second action that the party may not be able to actually prove in the first action all the items of the demand, or that all the damage may not then have been actually suffered. He is bound to prove in the first action not only such damage as has been actually suffered, but also such prospective damage by reason of the breach as he may be legally entitled to, for the judgment he recovers in such action will be a conclusive adjudication as to the total damage on account of the breach. [Citation.]" (Pp. 47-48.)

Although the *Abbott* case involved an action for specific performance followed by an action for damages, it is apparent that the same reasoning would apply where the first action was one for injunctive relief rather than specific performance. This precise situation arose in the subsequent case of *Orloff* v. *Hollywood Turf Club* (1952) 110 Cal.App.2d 340, 345 [242 P.2d 660], and the court stated: "[I]t seems apparent under the rule laid down in *Abbott* v. *'76 Land & Water Co*. . . . that the damages sought in the instant actions were recoverable in the injunction suits and hence are not recoverable here."

Although it is thus clear that the instant action would be barred had plaintiffs been actual parties to the prior injunctive action brought against defendants, it does not follow that such action is barred because plaintiffs were in control of the prior action and in privity with Joan Baez, who was the actual plaintiff in that action. Defendants have been unable to cite a single California case holding that the rule against splitting a cause of action applies to privies, as opposed to actual parties. It is apparent that it does not.

California follows the rule stated in section 84 of the Restatement of Judgments. (*McRae* v. *Bates* (1961) 196 Cal.App.2d 510, 513-514 [16 Cal.Rptr. 565].) Section 84 provides that "A person who is not a party but who controls an action, individually or in co-operation with others, is bound by the adjudications of *litigated matters* as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction; . . ." (Italics supplied.) In comment (b) of section 84, it is made clear that the rule has nothing to do with merger or bar, and that "since the one in control is not a party to the action, the cause of action upon which the judgment is based is

necessarily a different cause of action from that which is the basis for a subsequent action between him and a party to the action."

Under section 84, it is apparent that plaintiffs' status as privies to Baez in the injunctive action would not bar the bringing of the instant action by plaintiffs but would merely render plaintiffs bound by the adjudications of matters actually litigated in said action. Since the findings in the injunctive action were favorable to Baez and to plaintiffs, it is apparent that defendants can derive no benefit from the application of the doctrine of res judicata and that it would serve no useful purpose for this court to make a finding that plaintiffs were in control of the injunctive action and in privity with Baez.

■ Defendants next contend that the trial court erred in applying the doctrine of collateral estoppel and holding that defendants were bound by the findings in the injunctive action. Defendants reason that since plaintiffs were not parties to the prior action and their participation therein did not bar the bringing of the instant action, it would be totally inequitable to apply the doctrine of collateral estoppel and allow plaintiffs to benefit by the findings in the prior action.

■ Defendants appear to be seeking the imposition of a requirement of mutuality of estoppel, which was expressly abandoned in *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 811-813 [122 P.2d 892]. ■ It is now settled in this state that the following three questions are determinative of the applicability of the doctrine of collateral estoppel: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" (*Bernhard* v. *Bank of America, supra,* at p. 813; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *People* v. *One 1964 Chevrolet Corvette Convertible* (1969) 274 Cal.App.2d 720, 726 [79 Cal.Rptr. 447]; *Seltzer* v. *Seltzer* (1969) 276 Cal.App.2d 137, 143 [80 Cal.Rptr. 688]; *People* ex rel. *State of Cal.* v. *Drinkhouse* (1970) 4 Cal.App.3d 931, 936 [84 Cal.Rptr. 773].)

■ In the case at bar, it is apparent that all three questions must be answered in the affirmative. The basic issue in the instant action and in the prior injunctive action was precisely the same: whether defendants acted wrongfully and in violation of the exclusive recording agreements between plaintiffs and Baez when defendants manufactured and distributed the record "Joan Baez in San Francisco." It is equally clear that defendants were parties to the injunctive action and that Baez recovered a final judgment on the merits against them. It may also be noted that the prior

injunctive action and the instant action were tried by the same judge, who was therefore in the best possible position to determine whether the issues in both actions were identical and whether defendants received a full and fair adversary hearing in the prior action.

■ Defendants contend that the trial court erred in finding that their conduct in producing and distributing "Joan Baez in San Francisco" was violative of the exclusive recording agreements between plaintiffs and Baez. This argument may be disposed of summarily. The injunctive action resulted in findings that plaintiffs' contract with Baez was for "the exclusive manufacture and sale by [Vanguard] of phonograph records of performances by BAEZ" and that defendants' acts "interfered with and impaired" that contract. Under the doctrine of collateral estoppel, the prior court's determination is conclusive in the instant action as to the issues determined and every matter which might have been urged to sustain or defeat said determination. (*Pacific Mut. Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715, 724-725 [285 P.2d 636]; *Bleeck* v. *State Board of Optometry* (1971) 18 Cal.App.3d 415, 428 [95 Cal.Rptr. 860].)

■ Defendants next contend that the trial court erred in admitting into evidence, over their objection, a summary of plaintiffs' sales of Baez records during the period between December 1960 and June 1967. Defendants contend that the summary in question did not qualify as a business record under Evidence Code, section 1271.

The record shows that the sales summary was originally prepared by plaintiffs' controller in response to certain interrogatories from defendants. The source materials for the summary consisted of some 50,000 sales invoices, and the information contained in the summary was abstracted from the sales invoices by means of data processing machines. After the summary had been delivered to defendants, plaintiffs' secretary-treasurer was deposed by defendants and was asked how the summary had been prepared. He offered to allow defendants' counsel to examine the sales invoices from which the summary had been prepared. He also advised defendants' counsel that Joan Baez had previously conducted an audit of plaintiffs' books and records and had found no discrepancies between plaintiffs' sales figures and the royalty statements sent to her. Defendants' counsel was furnished with the royalty statements. He declined the opportunity to examine plaintiffs' sales invoices, but objected to the introduction of the sales summary at the trial. The trial court overruled the objection and admitted the summary into evidence.

The trial court was clearly correct in admitting the sales summary into evidence. ■ Pursuant to Evidence Code, section 1509, a summary

of business records consisting of numerous accounts or other writings that cannot be examined in court without great loss of time, is admissible in evidence upon a showing that the actual business records are entitled to admission in evidence; but the court, in its discretion, may require the actual business records to be produced for inspection by the adverse party. (*Exclusive Florists, Inc.* v. *Kahn* (1971) 17 Cal.App.3d 711, 714 [95 Cal.Rptr. 325].) ■ A person who directs or supervises the preparation of a summary may testify to its contents, and the summary may be received in evidence. (*Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1970) 8 Cal.App.3d 1009, 1016-1017 [87 Cal.Rptr. 908].)

■ In the case at bar, plaintiffs' secretary-treasurer, Mr. Solomon, testified that the summary was prepared by the controller under his direction. It is clear that the summary was prepared from admissible business records, and there was no need for the trial court to require the production of said records because plaintiffs had already made them available to defendants. A trial court is vested with broad discretion in determining whether a writing meets the requirements of a business record (*Exclusive Florists, Inc.* v. *Kahn, supra,* at p. 716), and it is apparent that no abuse of discretion occurred in the instant case.

Defendants finally contend that plaintiffs were not entitled to recover their attorney's fees and expenses incurred in seeking injunctive relief against parties other than defendants; and that in any event, the evidence does not support the court's finding that the total amount of such attorney's fees and expenses was $17,500.

■ There is no merit to defendants' contention that plaintiffs were not entitled to recover the attorney's fees and costs incurred by them in bringing injunctive actions against parties other than defendants in order to prevent the distribution and sale of defendants' record. In *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618 [30 Cal.Rptr. 821, 381 P.2d 645], the court held that where the defendant's breach of duty to the plaintiff had made it necessary for the plaintiff to sue third persons, the plaintiff was entitled to recover from the defendant the attorney's fees incurred in suing the third persons. Although the plaintiff in Prentice had sued the defendant and the third persons in the same action, the court held that this fact constituted no bar to the plaintiff's right to recover from the defendant the attorney's fees incurred in the prosecution of the counts in the complaint against the third persons.

■ With regard to the alleged insufficiency of the evidence to support the court's finding that plaintiffs expended $17,500 in attorney's fees and costs in suing third persons, defendants first assert that much of the evidence of plaintiffs' expenses was violative of the best evidence rule and

consisted of testimony as to plaintiffs' answers to defendants' interrogatories. This argument is without merit, since the record shows that the testimony in question was elicited without any objection by the defense. (Evid. Code, § 353, subd. (a).)

Defendants contend that even if the testimony as to plaintiffs' expenses and attorney's fees was properly admitted, it is apparent from a review of said testimony that plaintiffs did not expend $17,500 in attorney's fees and costs in suing third persons. Defendants correctly point out that Mr. Solomon testified that plaintiffs expended the total sum of $19,181.17 in attorney's fees and costs in suing third persons. Defendants also point out that Solomon testified that numerous items included within this sum were for expenses and attorney's fees in connection with the San Francisco injunctive suit brought against defendants and another injunctive suit which was brought against defendants in Detroit, Michigan. Defendants assert that plaintiffs were not entitled to recover attorney's fees and costs incurred in suing defendants, as opposed to third persons, and that all such expenses should have been deducted from plaintiffs' total claim of $19,181.17.

To cite certain pertinent examples from defendants' brief, defendants claim that the $19,181.17 total included $4,000 paid to Solomon as compensation for time spent in connection with the San Francisco injunctive action against defendants; $756.83 for Solomon's traveling expenses to appear in the San Francisco injunctive action; $952.20 for the traveling expenses of Herb Corsack, plaintiffs' sales manager, in connection with the San Francisco and Detroit actions; $1,200 to compensate Corsack for time spent in connection with the San Francisco and Detroit actions; and $1,875 paid to William Ortman, the attorney who litigated the Detroit action against defendants.

Plaintiffs have made no attempt in their brief to demonstrate that any of the items specified in defendants' brief constituted expenses which were properly recoverable by plaintiffs and which were incurred in bringing suit against persons other than defendants. Instead plaintiffs have chosen to rely upon broad principles pertaining to the propriety of general findings and the duty of an appellate court to uphold the trial court's findings if they are supported by the evidence.

A review of defendants' citations to the record affirmatively demonstrates that plaintiffs' claim of $19,181.17 in attorney's fees and expenses did include various substantial sums expended by plaintiffs in connection with actions brought directly against defendants. Although it cannot be said that defendants have demonstrated that each of the items disputed by them should have been disallowed in its entirety, defendants have

demonstrated that there is insufficient evidentiary support for the court's finding that plaintiffs incurred attorney's fees and expenses of $17,500 in suing persons other than defendants. Under the circumstances, it is necessary that the cause be remanded in order that a proper apportionment may be made between the expenses incurred by plaintiffs in connection with suits brought against third persons and those incurred in connection with suits brought against defendants. (*Isthmian Lines, Inc.* v. *Schirmer Stevedoring Co.* (1967) 255 Cal.App.2d 607 [63 Cal.Rptr. 458].)

The purported appeal from the order denying defendants' motion for a new trial is dismissed. The judgment is reversed and the cause remanded to the superior court for further proceedings in conformity with this opinion.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied April 27, 1972, and appellants' petition for a hearing by the Supreme Court was denied May 23, 1972.