[Civ. No. 5455. Fifth Dist. Sept. 17, 1982.]

MOUNTAIN HOME PROPERTIES, Plaintiff and Respondent, v.
PINE MOUNTAIN LAKE ASSOCIATION, Defendant and Appellant.

960

## COUNSEL

Cardozo, Nickerson, Martelli, Curtis & Arata and Michael B. Ijams for Defendant and Appellant.

Fulop, Rolston, Burns & McKittrick, Fulop & Hardee and Allan S. Morton for Plaintiff and Respondent.

## OPINION

**BIANCHI, J.\***—This is an appeal by appellant Pine Mountain Lake Association from a judgment in favor of respondent Mountain Home Properties compelling appellant to transfer membership in its association to respondent. At issue in this case is the heretofore undecided question of whether Civil Code section 1466[1] bars an association of real property owners from imposing liability on new members for the unpaid association debts of the new member's predecessors in interest. We hold that section 1466 protects new members from such liability.

Mountain Home Properties acquired certain lots and deeds of trust in the Pine Mountain Lake subdivision by conveyance from Diversified Mortgage Investors (DMI) in or about April 1977. DMI had acquired title to the lots and deeds of trust by nonjudicial foreclosure in early 1976.

Pine Mountain Lake Association, an association of owners in the Pine Mountain Lake Subdivision, is empowered by section 5(f) of its "Declaration of Restrictions" and article VIII of its bylaws to assess

---

\*Assigned by the Chairperson of the Judicial Council.

[1]Civil Code section 1466 provides: "No one, merely by reason of having acquired an estate subject to a covenant running with the land, is liable for a breach of the covenant before he acquired the estate, or after he has parted with it or ceased to enjoy its benefits."

charges against members for the use of association-owned facilities and the upkeep of association property.[2] Under the terms of its "Declaration of Restrictions" and bylaws, the association is empowered to file liens in the amount of delinquent assessments against the lots of those who have not paid their assessments. The association may also refuse to transfer membership on its books or grant membership privileges (such as voting rights) until delinquent assessments are paid.

At the time DMI acquired title to lots and deeds of trust within the association, its predecessors in interest owed in excess of $40,000 in delinquent assessments. These delinquent assessments remained unpaid at the time respondent acquired DMI's interests. The association refused to transfer membership to respondent pursuant to its "Declaration of Restrictions" and bylaws. Respondent thereupon sued inter alia for declaratory and injunctive relief to compel the association to transfer said memberships.

In the meantime, appellant sought to collect the delinquent assessments from DMI. The Superior Court for Tuolumne County held that Civil Code section 1466 precluded DMI from liability for the unpaid assessments of its predecessors in interest.

The trial court in the case at bar decided that appellant Pine Mountain Lake Association was collaterally estopped from asserting the personal liability of the respondent for the unpaid and delinquent assessments by reason of the previous judgment in favor of DMI. The trial court also held that appellant could not withhold from respondent or its vendees enjoyment of membership or membership rights in the Pine Mountain Lake Association solely because of nonpayment of delinquent assessments. This appeal followed.

DISCUSSION

I.

*Did the trial court properly apply the principles of collateral estoppel?*

Appellant contends the trial court erroneously applied the principles of collateral estoppel because the doctrine (1) may not be applied offen-

---

[2]The "Declaration of Restrictions" and bylaws were recorded in July 1969. Thus, both respondent and DMI had notice of these provisions.

sively and (2) may not be applied where, as here, there were "different historical transactions" at issue.

Preliminarily, it must be noted appellant does not contend that the general test for the application of collateral estoppel is not met in this case. ■ A party is collaterally estopped from relitigating an issue already decided in a prior case if: (1) the issue decided in the previous litigation is identical with that presented in the instant action, (2) there was a final judgment on the merits in the first action, and (3) the party against whom the plea of collateral estoppel is asserted was a party to the first action. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810-813 [122 P.2d 892].)

Although not raised by appellant, we note that an argument could be mounted that prong one is not satisfied in this case. In the DMI litigation, appellant, as plaintiff, sought to impose liability for delinquent assessments on DMI. Here, appellant, as defendant, seeks to avoid transferring membership in its association to respondent. Arguably, the identical issue is not presented in the two cases, since the legal result sought by appellant is different in each case. However, to the extent that appellant's right to deny membership to respondent is contingent upon a finding that respondent is liable for delinquent assessments, the identical issue is present in both cases. Therefore the general test for the application of collateral estoppel is satisfied.

■ For its first contention in opposition to the application of collateral estoppel, appellant contends that a prior judgment may not be used offensively. Appellant's contention has no merit.

As indicated by prong three of the *Bernhard* test, collateral estoppel may be applied against a party so long as that party was bound by the judgment in the first action. There is no requirement that a plaintiff asserting the plea need have been a party to the prior action, nor is there any bar to its offensive use. (*Bernhard* v. *Bank of America, supra*, 19 Cal.2d 807, 812; also see *Vanguard Recording Society, Inc.* v. *Fantasy Records, Inc.* (1972) 24 Cal.App.3d 410 [100 Cal.Rptr. 826], where collateral estoppel was asserted offensively.

However, this is not to say that collateral estoppel will be blindly and mechanically applied by the courts. In certain cases, considerations of policy will restrict its offensive use. (*O'Connor* v. *O'Leary* (1967) 247 Cal.App.2d 646, 650 [56 Cal.Rptr. 1].) "Generally the objective of res

judicata and its affiliate collateral estoppel, is to prevent 'vexatious litigation with its attendant expense both to the parties and the public.' [Citation.] Where this objective will not be aided by application of these doctrines, and assertion thereof would 'defeat the ends of justice or important considerations of policy,' they may not be invoked. [Citations.]" Here, appellant fails to point to any potential for injustice in the application of collateral estoppel, but chooses instead to baldly urge that the offensive use of the prior judgment is inappropriate in this case. Appellant's assertion, without supporting argument, is entirely unpersuasive.

█ Further, it would appear the policies supporting application of collateral estoppel are served by its use in this case. As the Supreme Court has noted, collateral estoppel prevents the waste of judicial resources by eliminating repetitive litigation, prevents vexatious litigation, and promotes consistency of judgments. (*Clemmer v. Hartford Ins. Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].) Here, appellant had a full and fair opportunity to litigate the question of the liability of new owners for the delinquent assessments of their predecessors in interest. Having failed to appeal the adverse judgment in the DMI case, appellant should not have the opportunity to relitigate the issue merely because DMI sold their property to respondent. Clearly, appellant is engaging in repetitive litigation in search of an inconsistent judgment. The principles of collateral estoppel should bar appellant's search.

Appellant's second contention in opposition to the application of collateral estoppel is far more persuasive. Appellant relies on the rule of *Chern v. Bank of America* (1976) 15 Cal.3d 866 [127 Cal.Rptr. 110, 544 P.2d 1310], where it was stated that collateral estoppel does not apply in a subsequent action involving parallel facts but concerning a "different historical transaction." (15 Cal.3d at p. 871.) In *Chern*, plaintiff attacked certain bank policies. Defendant bank asserted that plaintiff was collaterally estopped to bring the action since she had suffered defeat in an identical suit against a different bank. The court held collateral estoppel did not apply since the issue decided in the earlier case was one of law, which could not be given collateral effect "divorced from the specific facts to which [it] applied, . . ." (*Id.*, at p. 872.)

Here, appellant contends the judgment in the DMI case should not be given collateral effect since a question of law is presented which involves a "different historical transaction." There is no doubt that a

question of law is presented.[3] However, it remains to be determined whether we are faced with a "different historical transaction."

In *Chern*, plaintiff received advertising representations from two banks. It is not clear as to whether the banks made identical representations. The court tells us only that "... estoppel is asserted on the basis of representations made by a different defendant in a different transaction than that complained of in the prior suit." (15 Cal.3d at p. 871.) Arguably, if the plaintiff in *Chern* received factually different representations from each bank, *Chern* would be distinguishable from this case. Here, respondent and DMI were in an identical factual situation. Each was the successor in interest to property upon which delinquent assessments were owing. As to each, the identical legal question of their liability for these assessments was presented. In *Chern*, however, it is possible that the identical legal question arose in two different factual settings, thus indicating that factual differences could compel a different result in each case.

In our view, another aspect of the *Chern* opinion militates against the application of collateral estoppel in this case. The court noted the "... sound judicial policy against applying collateral estoppel in cases which concern matters of important public interest." (15 Cal.3d at p. 872; accord *City of Berkeley* v. *Superior Court* (1980) 26 Cal.3d 515, 520, fn. 5 [162 Cal.Rptr. 327, 606 P.2d 362], cert. den. 449 U.S. 840 [66 L. Ed.2d 48, 101 S.Ct. 119].) The instant case is arguably one of public interest in that it raises an issue which is apparently one of first impression in the appellate courts.

As will be discussed, *infra*, this case raises the heretofore unresolved question of whether Civil Code section 1466 bars liability in the situation where a land association seeks to impose liability on a new property owner for the unpaid association assessments of the new owner's predecessor in interest. Since this issue is likely to arise again, there is a public interest in having the issue resolved by the courts.

While it is unclear whether *Chern* v. *Bank of America, supra*, 15 Cal.3d 866, would bar the application of collateral estoppel on the theory that "different historical transactions" are involved, the central issue presented in this appeal is, at least arguably, one of public importance.

---

[3]The question of whether Civil Code section 1466 bars respondent's liability for "delinquent assessments" is considered in issue III, *infra*.

Therefore we will decide this case on the merits of the parties' contentions.

## II.

*Does the "Declaration of Restrictions" of the Pine Mountain Lake Association assess liability on a new owner for the unpaid assessments of the new owner's predecessors in interest?*

Paragraph 5(f)(4) of the "Declaration of Restrictions" of the Pine Mountain Lake Association provides:

"*Assumption of obligation to pay assessments.* Each lot owner in the Subdivision shall, by acceptance of a deed thereto or the signing of a contract or agreement to purchase the same, whether from Declarant or a subsequent owner of such lot, bind himself, his heirs, personal representatives and assigns to pay all charges determined and levied upon such lot, including interest thereon and collection cost thereof, if any, including attorney's fees: *and the obligation to pay such charges, interest and costs thereby constitutes an obligation running with the land.* Sale or transfer of any lot shall not affect any lien for charges provided for herein." (Italics added.)

Appellant contends this provision provides authority for its position that respondent is liable for delinquent assessments owed to the association by respondent's predecessors in interest. Respondent disputes this contention, and argues that the provision does not make successors in interest, such as itself, liable for the debts of their predecessors in interest.

The association finds further support for its position in article VIII ("Assessments") of its bylaws. That provision provides that each year the board of directors shall determine the amount of assessments to be "... levied against each lot in the Subdivision, which amount shall be a debt of the owner thereof at the time such charge is made."

These provisions clearly make any lot owner liable for assessments levied on his lot during his ownership and can be construed in favor of imposing liability on a present owner for all prior assessments owed by his predecessors in title on the basis that he is an "assignee" of the prior owner. This interpretation is supported by the provisions that "[s]ale or transfer of any lot shall not affect any lien for charges provided for

herein" and ". . . the obligation to pay such charges, interest and costs thereby constitutes an obligation running with the land."

Respondent concedes that had it taken its property by way of direct transfer from a party who owed delinquent assessments, it would be liable for those assessments. However, it is not at all certain that these provisions are sufficient to impose liability for past obligations to one who acquires title by way of a nonjudicial foreclosure as did respondent's predecessor, DMI.[4]

Moreover, as respondent is quick to point out, the law does not favor covenants such as the one found in the "Declaration of Restrictions." ■ The general rule is that covenants running with the land are to be strictly construed and any doubt as to whether an enforceable covenant has been created will be resolved in favor of the free use of the land. (*Werner* v. *Graham* (1919) 181 Cal. 174, 181 [183 P. 945].)

To hold respondent liable for delinquent assessments which were (at least in the view of the trial court) extinguished at the time DMI acquired its property, would seem to be a liberal construction of the covenant. Although we have some doubts as to whether the covenant may be applied to respondent, the matter is resolved by the application of section 1466 of the Civil Code.

### III.

■ *Does Civil Code section 1466 bar liability of a successor owner for debts of his predecessors in interest?*

Notwithstanding its concession that its liens were extinguished at the time DMI took title to the property (see fn. 4), appellant asserts that it can still refuse to recognize respondent Mountain Home Properties and its vendees as members in the association until all delinquent assessments are paid.

---

[4]The trial court held that DMI took its title free and clear of any liens held by the association, since DMI's deeds of trust were recorded prior to the association's liens. The court reasoned that DMI's deeds of trust were superior to the association's liens, hence the liens were extinguished at the time DMI took title to its property. (See Civ. Code, §§ 1214-1215, 2897-2898.) The association did not appeal from this part of the trial court judgment, but contends that the debt underlying the lien survives the extinguishment of the lien. In light of our holding that Civil Code section 1466 protects respondent from any liability, we do not address appellant's contention.

The privileges of membership in the association include voting, and use of the streets, parks and recreational facilities in the subdivision. Thus, if appellant can refuse membership rights to respondent and its vendees, it would seem it could even deny access to lots. Moreover, as Pine Mountain Lake Subdivision is a recreational development, the denial of use of amenities would render the lots virtually worthless. Without the rights of membership, Mountain Home Properties would have difficulty in marketing the lots.

The "Declaration of Restrictions" makes membership in the association appurtenant to lot ownership. Paragraph 5(a) states: "*Membership*. Every person, ... who acquires title, legal or equitable, to any lot in the subdivision shall become a member of the Pine Mountain Lake Association, a California nonprofit corporation ("Association") ...."

There is no question that appellant has authority under the law to impose assessments against its members.[5] The question, however, is whether the unpaid assessments of prior owners and members can serve as the basis to deprive respondent and its vendees of membership and membership privileges.

Appellant contends it has the right to deny membership to respondent pursuant to the following provisions of its bylaws:

Article IV, section 2: "*Transfer.* A voting membership in the Association is transferable only upon the conveyance of the lot giving rise to such membership and any other attempted transfer or assignment of such membership shall be null and void. Transfers of record which occur by reasons of the conveyance of any lot subsequent to the initial conveyance from the Subdivision developer shall be subject to a fee of $25.00 and *to the payment of all indebtedness to the Association of the member whose membership is transferred*." (Italics added.)

Article VIII, section 4: "*Enforcement.* The Association shall not be required to transfer memberships on its books or to allow the exercise of any rights or privileges of membership on account thereof to any member or to any persons claiming under them, or to the land to which any memberships are appurtenant, unless or until all assessments and

---

[5]Former Corporations Code sections 9301 and 9402-9403 were in effect at the time appellant's bylaws and "Declaration of Restrictions" were created. These statutes were repealed in 1978 and reincorporated in various other provisions of the Corporations Code (see Stats. 1978, ch. 567).

charges to which the same are related are paid at the time and in the manner provided herein."

Appellant argues that since its bylaws were authorized under former Corporations Code sections, its delinquent assessments policy must be deemed lawful unless there are other contrary provisions found in the laws of this state.

Respondent does not dispute the validity of these provisions when applied to a voluntary conveyance by the delinquent owner. Recordation of the assessment lien would give constructive notice to the transferee of the assessment due. However, respondent contends that these provisions should not apply to a conveyance by foreclosure and urges that Civil Code section 1466 precludes its liability for delinquent assessments. Respondent contends it is entitled to the protection offered by section 1466. Having taken an estate subject to a covenant to pay assessments, respondent believes section 1466 eliminates its liability for delinquent assessments owed by its predecessors in interest.

For its part, appellant urges that section 1466 does not apply to the factual situation presented here. Appellant contends section 1466 refers to the situation where a party takes only an estate in land. Here, a party who purchases property within the Pine Mountain Lake Association also obtains numerous and varied benefits such as the street and sewer facilities owned and maintained by the association as well as many amenities such as a golf course, country club, swimming pool, and other facilities. Appellant concludes that section 1466 does not apply in this case, since the association must be permitted to control its membership and must also be able to make reasonable assessments in order to insure that the various services mentioned above are adequately funded.

The issue is therefore squarely framed as to whether section 1466 applies to the facts of this case. This issue is apparently one of first impression in the appellate courts. Our task is made all the more difficult, since there is virtually no authority construing section 1466. Therefore, we must be guided solely by the general rules of statutory interpretation. The application of these rules dictates, in our opinion, a holding that section 1466 bars any liability on the part of respondent.

■ The primal principle of statutory construction requires the ascertainment of the intent of the Legislature. (*Select Base Materials* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)

Where, as here, there is no direct evidence of legislative intent, the court must turn to the words of the statute for the answer. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1], cert. den., 340 U.S. 879 [95 L.Ed. 639, 71 S.Ct. 117].)

The obvious purpose of section 1466 is one of fairness to a party who acquires property. Since such a party has no connection with the property until he comes into possession, the Legislature has provided that the party should not be liable for the debts of its predecessors in interest. This purpose of fairness clearly applies in this case. Respondent purchased a large quantity of property from DMI. To impose over $40,000 in unpaid assessments on respondent is manifestly unfair in that no benefits have accrued to respondent prior to its purchase.

It may be, as appellant contends, that the Legislature could not have intended to bar liability in a situation where a land association requires capital to maintain numerous facilities which will be of benefit to respondent. While this is perhaps true, we believe other considerations outweigh appellant's need to maintain adequate capitalization.

Initially, as has been discussed, essential fairness dictates that respondent should not be held liable for unpaid assessments for which it will receive nothing in return. Moreover, appellant's contention is more appropriately directed to the Legislature rather than the judiciary. Section 1466, on its face, applies to the facts of this case. When the Legislature enacted this section in 1872, it could not have been considering factual situations similar to that present here. However, where a change in social conditions arguably calls for a statutory modification, it is the Legislature and not the judiciary which must bring the law into conformity with changed conditions. (*People* v. *Russell* (1971) 22 Cal.App.3d 330, 335 [99 Cal.Rptr. 277]; 58 Cal.Jur.3d, Statutes, § 89, pp. 442-443.) "[T]he determination as to whether social concepts have changed and whether a law should be modified to conform with social developments is a legislative, not a judicial, prerogative." (58 Cal.Jur.3d, Statutes, § 89, p. 443, fn. omitted.)

Thus, it is our conclusion that section 1466 protects respondent from liability for the unpaid assessments of its predecessors in interest. An analogous case which lends logical support to our conclusion is *Nourse* v. *Los Angeles* (1914) 25 Cal.App. 384 [143 P. 801]. There, the city had an ordinance which denied water service to the new owner of property where his predecessor was delinquent on his account. The court

ordered the city to supply service to the owner and held, "... the regulation in question is unreasonable in that ... it makes one person liable for the debts of another and contravenes the duty assumed by the city to serve all its inhabitants without discrimination." (*Id.*, at p. 387.)

Similarly here, the regulations of the association discriminate against respondent as a new owner. There does not appear to be anything reasonable about compelling respondent to pay the debts of another as a condition precedent to obtaining membership in the association. Section 1466 protects respondent against such coercion.[6]

The judgment is affirmed.

Franson, Acting P. J., and Hanson (P. D.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 1, 1982. Newman, J., did not participate therein.

---

[6]Our holding does not encompass the issue of whether section 1466 would protect respondent had it taken its interests by direct transfer from the debtors rather than by nonjudicial foreclosure as it did (through DMI). We express no opinion on that issue.