[No. A118684. First Dist., Div. Four. June 3, 2008.]

BAYCHESTER SHOPPING CENTER, INC., et al., Plaintiffs and Appellants, v.
SAN FRANCISCO RESIDENTIAL RENT STABILIZATION AND ARBITRATION BOARD, Defendant and Respondent;
LARRY FINGERHUT, Real Party in Interest and Respondent.

COUNSEL

Wiegel & Fried, Steven C. Williams and John P. Baba for Plaintiffs and Appellants.

Dennis J. Herrera, City Attorney, and Wayne Snodgrass, Deputy City Attorney, for Defendant and Respondent.

Steven Adair MacDonald & Associates and Stephen M. Soltanzadeh for Real Party in Interest and Respondent.

OPINION

RIVERA, J.—Baychester Shopping Center, Inc., Thomas Iveli, and 406-10-12 Realty Corporation (collectively, Baychester) appeal from the trial court's order upholding respondent San Francisco Residential Rent Stabilization and Arbitration Board's (Board) decision finding Baychester liable for rent overpayments charged to tenant Larry Fingerhut by the former landlord and owner of a nine-unit apartment building. Baychester contends that it cannot be held liable for the unlawful rent increases imposed by the former landlord. We affirm.

## I. FACTUAL BACKGROUND

In December 2005, Baychester purchased the nine-unit building located at 1040 Ashbury Street in San Francisco from Svend Hansen. Hansen rented unit No. 8 in the building to Fingerhut in 1991. The building was subject to San Francisco's Residential Rent Stabilization and Arbitration Ordinance, San Francisco Administrative Code, chapter 37 (rent ordinance).[1]

In 1991, Hansen and Fingerhut entered into a lease agreement under which the rent for unit No. 8 was $950 per month. In 1994, Hansen and Fingerhut agreed that Fingerhut would manage the building in exchange for a free rental of unit No. 8. Hansen terminated the management agreement in October 2001 and told Fingerhut that effective November 1, 2001, the rent for unit No. 8 would be $2,000 per month. Fingerhut disputed the increase and paid only $950 per month in November and December of 2001.

In December 2001, Hansen asked Fingerhut to perform management duties for the building in exchange for an $800 reduction in rent. Hansen subsequently presented Fingerhut with an on-site maintenance operator lease,

---

[1] All subsequent statutory references are to the San Francisco Administrative Code, unless otherwise indicated.

listing the rent for unit No. 8 as $2,000. Fingerhut did not sign the agreement but paid the increased rent of $2,000 per month beginning in January 2002, while Hansen paid him $800 to perform certain managerial and maintenance duties.

On September 1, 2003, Hansen increased Fingerhut's rent from $2,000 to $2,016 and continued to pay him $800 per month. In September 2004, the rent was increased to $2,023.30, and in August 2005, the rent was raised to $2,044.76. Hansen continued to pay Fingerhut $800 per month for maintenance services.

On September 1, 2005, however, Fingerhut notified Hansen that he would no longer perform the maintenance duties. For that month's rent, Fingerhut paid $1,244.76, and continued to pay that sum through December 2005. On October 25, 2005, Fingerhut filed a tenant petition with the Board claiming that Hansen had unlawfully increased his rent.

On December 23, 2005, Hansen sold the building to Baychester. Fingerhut tendered January 2006's rent in the amount of $1,244.76 to Baychester but it refused to accept the check and returned it to him. Fingerhut later amended the tenant petition to name Baychester as the new owner of the building.

A hearing on the tenant petition was held on February 15, 2006, before an administrative law judge. The judge granted the petition, finding that Fingerhut's current lawful rent was $961.05. The judge further found that Baychester was liable for $41,414.10, representing rent overpayments for the period from October 1, 2002, through December 31, 2005.

Baychester appealed the judge's decision to the Board. The Board denied the appeal. Baychester thereafter filed a petition for a writ of administrative mandamus alleging that the Board abused its discretion in awarding rent overpayments to Fingerhut for a period of time in which Baychester did not own the building. The trial court denied the petition, finding that the Board did not act in excess of its jurisdiction or abuse its discretion in awarding the overpayments. The court further found that the Board's decision was in enforcement of the rent ordinance and not a breach of covenant and hence

Civil Code section 1466 was inapplicable. The court further found that its prior decision in *Larsen v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (Super. Ct. S.F. City and County, 1997, No. 979777) (*Larsen*) did not give rise to res judicata.

## II. DISCUSSION

### A. *The Rent Ordinance*

■ The rent ordinance specifically addresses permissible rent increases and imposes its provisions upon landlords, whom it defines as including successor landlords or owners of residential units within the City and County of San Francisco (City). In particular, section 37.2 defines a landlord as "[a]n owner, lessor, sublessor, who receives or is entitled to receive rent for the use and occupancy of any residential rental unit [in] San Francisco, and the agent, representative or successor of any of the foregoing." Under the rent ordinance, a landlord may impose annual rent increases "which do[] not exceed a tenant's base rent by more than 60 percent" of the United States Department of Labor's increase in the consumer price index (CPI) for the preceding 12 months. (§ 37.3, subd. (a)(1).) The Board is required to publish the increase in the CPI on March 1st of each year. (*Ibid.*) The rent ordinance further provides that any nonconforming rent increase is "null and void" and that a tenant can petition for a hearing to contest rent increases that exceed the limitations published by the Board. (§ 37.3, subd. (b)(5); see *id.*, subd. (a)(6)(E).) ■ And, as pertinent here, the rent ordinance provides that a landlord can be held liable to the tenant for "rent overpayments resulting from rent increases which are null and void for no more than the three-year period preceding the month of the filing of a . . . tenant petition . . . ." (§ 37.8, subd. (e)(7).)[2]

■ Here, the parties do not contest the Board's finding regarding the amount of the overcharges but only whether Baychester, as the successor landlord, is liable for them. Under the plain language of the rent ordinance, it is clear that the Board properly found Baychester liable. As a successor in interest to Hansen, Baychester was liable for rent increases exceeding the limitations published by the Board for the three-year period preceding the filing of the tenant petition. (§ 37.8, subd. (e)(7).) The trial court thus correctly upheld the Board's finding.

---

[2] The rent ordinance also contains a provision that benefits a successor landlord if the former landlord has failed to take advantage of the allowable annual rent increases. Section 37.3, subdivision (a)(2) provides that a landlord (and hence, a successor landlord) may "bank" or accumulate annual rent increases and increase and impose the amount of the increases on a "tenant's subsequent rent increase anniversary dates." (§ 37.3, subd. (a)(2).)

## B. *Civil Code Section 1466 Is Not Implicated in This Case*

Baychester contends that Civil Code section 1466 precludes it from being held liable for Hansen's conduct because it cannot be held liable for a breach committed by a predecessor landlord. It relies on *Mountain Home Properties v. Pine Mountain Lake Assn.* (1982) 135 Cal.App.3d 959, 971 [185 Cal.Rptr. 623] (*Mountain Home*).

Civil Code section 1466 provides in relevant part that "[n]o one, merely by reason of having acquired an estate subject to a covenant running with the land, is liable for a breach of the covenant before he acquired the estate . . . ." In *Mountain Home*, the court held that section 1466 precluded a successor owner of certain lots and deeds of trust in a subdivision from being held liable for the predecessor owner's delinquent assessments by the homeowners' association. (*Mountain Home, supra,* 135 Cal.App.3d at pp. 962, 971–972.) There, the assessments were imposed pursuant to the association's " 'Declaration of Restrictions' " and its bylaws and the association had previously obtained a judgment for them against the prior owner. (*Id.* at pp. 962–963.) The court determined that it would be unfair to require the new owner to pay the debts of another as a condition to obtaining membership in the association. (*Id.* at p. 972.)

*Mountain Home* is distinguishable from the facts here. While a covenant in a lease to pay rent runs with the land (*Salisbury v. Shirley* (1884) 66 Cal. 223 [5 P. 104]), Hansen did not breach a covenant in the lease but rather violated the provisions set forth in the rent ordinance (§ 37.3) regarding permissible rent increases. Unlike the situation in *Mountain Home*, where the plaintiff sought to hold the successor owner of property liable for a judgment owed by the prior owner, at issue here is an obligation imposed by the rent ordinance. *Mountain Home* involved an agreement with the prior owner, and did not address a successor owner's liability for an obligation imposed by statute.

■ For the same reason, Baychester's argument that its obligations under the rent ordinance are implied covenants that run with the land also fails. As the Board points out, Baychester's obligations under the rent ordinance differ from covenants in an agreement between the parties. Under Civil Code section 1428, a party's obligation arises either from a contract between the parties or by operation of law. Baychester's duty to impose only lawful rent increases arises under the rent ordinance, and thus by "operation of law" (Civ. Code, § 1428) and not pursuant to an agreement between the parties. As explained

in *Interstate Marina Development Co. v. County of Los Angeles* (1984) 155 Cal.App.3d 435, 448 [202 Cal.Rptr. 377], rent control is an exercise of a state's police power, and private parties are foreclosed from making private contractual arrangements to address rights that are subject to state restriction. Hence, inasmuch as restrictions on rent increases arise under the rent ordinance and not by virtue of an agreement between the parties, Civil Code section 1466 is inapplicable.[3]

Further, the rent ordinance is not preempted by state law. The rent ordinance concerns a matter of "local nature" upon which the City may legislate.

■ "Every California city possesses the general power to 'make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.' (Cal. Const., art. XI, § 7.) In addition, charter cities [such as San Francisco] have even greater authority: they have exclusive power to legislate over 'municipal affairs.' (Cal. Const., art. XI, § 5, subd. (a).)" (*Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 704 [209 Cal.Rptr. 682, 693 P.2d 261].)

Baychester claims that the rent ordinance is preempted because it conflicts with Civil Code section 1466 and violates public policy. As we have explained, however, section 1466 is not implicated in this case. Hansen did not breach a covenant of the lease but instead failed to follow the rent increase limitations of the rent ordinance. Moreover, the rent ordinance's provisions further the public policy of judicial economy by providing an expedited procedure for a tenant to recover rent overpayments. While Baychester disputes its liabilities as a successor landlord under the rent ordinance, its recourse was to seek reimbursement from the former owner of the property who apparently failed to disclose the existence of the tenant petition prior to selling the building to Baychester.

C. *The Rent Ordinance Does Not Violate Due Process*

■ Baychester next contends that the rent ordinance violates due process because successor owners can be held responsible for the conduct of prior owners. Baychester, however, has waived this issue on appeal because it

---

[3] Baychester's argument that Hansen was required to expressly assign its liability to Fingerhut is also without merit as it ignores the specific provisions of the rent ordinance.

failed to raise it below.[4] It is well settled that points not asserted in the trial court are deemed waived and will not be considered for the first time on appeal. (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117 [95 Cal.Rptr.2d 113].)

 In any event, there were no due process violations here. The standard to be applied in evaluating a substantive due process challenge is well settled. In order to demonstrate that the rent ordinance violates due process, Baychester must show that there is no rational relationship between the ordinance and the City's legitimate ends. (*20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 292 [32 Cal.Rptr.2d 807, 878 P.2d 566].) " 'In the exercise of its police power a Legislature does not violate due process so long as an enactment is procedurally fair and reasonably related to a proper legislative goal.' " (*Perkey v. Department of Motor Vehicles* (1986) 42 Cal.3d 185, 189 [228 Cal.Rptr. 169, 721 P.2d 50].)

Here, the rent ordinance was created to " 'safeguard tenants from excessive rent increases and, at the same time, to assure landlords fair and adequate rents . . . .' (S.F. Admin. Code, § 37.1(b)(6).)" (*Golden Gateway Center v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (1999) 73 Cal.App.4th 1204, 1208 [87 Cal.Rptr.2d 332].) In advancing this legislative purpose, the ordinance established a procedure for an expedited process for tenants to secure refunds of rent overpayments, and further provided that tenants could seek rent overpayments from a landlord or his successor within a three-year statutory period. (See § 37.8, subd. (e)(1) [hearing before Board on tenant's petition contesting rent increase to be held within 45 days of filing of petition].) The provisions in the ordinance concerning rent increases and challenges are reasonably related to the ordinance's purpose of regulating rents to ensure that tenants are not subjected to excessive rent increases.

With respect to procedural due process, the expedited hearing procedure ensures a fair and practicable procedure for tenants to rectify rent overpayments without having to resort to civil litigation.[5] While a successor landlord may be subjected to liability for a prior landlord's unlawful rent increases, we

---

[4] We reject Baychester's argument in its reply brief that the due process issue was raised by its one sentence statement in connection with its argument on the applicability of Civil Code section 1466 that its due process rights would be violated if it was "required to defend the conduct of another." Baychester did not support this argument with any legal authority or further argument.

[5] We note that the rent ordinance provides for 10 days' notice to the parties of the hearing date, and that during the hearing before an administrative law judge, the "parties may offer such documents, testimony, written declarations or other evidence as may be pertinent to the proceedings." (§ 37.8, subds. (d)(2), (e)(3).) This procedure is consistent with procedural due process. (*Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1279 [31 Cal.Rptr.3d 297] ["essence of procedural due process is notice and an opportunity to respond"].)

cannot conclude that it is unreasonable to place the burden on the successor landlord to exercise due diligence in purchasing rental property and to determine if tenants' rents have been charged in accordance with the rent ordinance. Moreover, we recognize that a successor landlord is in a better position to seek recourse against the prior owner for any unlawful rent increases. The rent ordinance's procedures thus protect tenants from uncontrolled rent increases and place the burden of safeguarding against those increases on the party best able to absorb the costs.

## D. *Res Judicata Does Not Bar Litigation of the Issues Here*

Finally, Baychester argues that res judicata precludes the Board's decision because the court previously held that the Board abused its discretion in holding a successor landlord liable for a former landlord's wrongful conduct against a tenant. Baychester relies on the court's order granting a petition for writ of mandate in *Larsen, supra,* No. 979777, finding that the Board abused its discretion in finding a successor landlord liable for a rent reduction of $50 per month for 12.625 years based on the former landlord's failure to provide heat. While the landlord there urged that Civil Code section 1466 applied, foreclosing his liability, the court cited sections 37.2(h) defining the term "landlord," and section 10.10, subdivision (c) of the San Francisco Rent Board Rules and Regulations as applicable. The latter regulatory section provides that a landlord can only be held liable for "decreased services" for a period of one year prior to the filing of the petition,[6] thus, the court found that the successor landlord was liable for only $350, representing "rent reductions corresponding to decreased housing services for the period of time that Landlords have owned the premises." (S.F. Rent Bd. Rules & Regs., § 10.10, subd. (c).)

"The doctrine of [res judicata] applies when 1) the issues decided in the prior adjudication are identical with those presented in the later action; 2) there was a final judgment on the merits in the prior action; and 3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication." (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065 [71 Cal.Rptr.2d 77].) Contrary to Baychester's characterization of *Larsen,* our review of the case demonstrates that the issue there was not identical to the issue presented in this case. The principles of res judicata therefore did not bar the litigation of the issues raised here.

---

[6] Section 10.10, subdivision (c) of the San Francisco Rent Board Rules and Regulations provides that no rent decrease will be allowed prior to one year preceding the filing of the petition, except in extraordinary circumstances or where there have been long-term verifiable oral or written notices to the landlord of decreased services.

## III. DISPOSITION

The order is affirmed.

Ruvolo, P. J., and Sepulveda, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 16, 2008, S165891. Baxter, J., was of the opinion that the petition should be granted.