Opinion
 

 JOHNSON, J.
 

 Appellant, Brenelli Amedeo, S.P.A., appeals from a judgment of dismissal after the trial court sustained respondents’ demurrer without leave to amend his complaint.
 

 Appellant contends the doctrine of res judicata does not preclude the present action as it involves a different primary right. It also contends an action seeking to impose alter ego liability may be brought outside of a joint debtor proceeding. It further argues a fraudulent conveyance action may be brought after the closing of a chapter 7 bankruptcy case. We agree and reverse the judgment of dismissal.
 

 Facts and Proceedings Below
 

 The present action follows a prior suit in which appellant sued Bakara Furniture, Inc. (Bakara) for breach of contract, conversion, common counts, and declaratory relief. On September 15, 1992, the court awarded appellant $80,407.53, the value of the merchandise delivered to Bakara pursuant to the contract.
 

 On September 28, 1992, before appellant could execute on its judgment Bakara filed a chapter 7 bankruptcy petition. On June 4, 1993, the trustee filed a “no asset” report, and the court closed the bankruptcy case. No part of appellant’s judgment was satisfied through the bankruptcy estate.
 

 On August 15, 1993, appellant commenced the present action against Bakara and the individual shareholders of Bakara, Hagop Bakarajian, Berjouhie Makdessian, and Laurice Bakarajian (respondents). Appellant’s complaint alleged alter ego liability, fraudulent conveyance, conspiracy to fraudulently transfer corporate assets, accounting of profits, intentional misrepresentation of fact, suppression of fact, conspiracy to defraud, and conversion.
 

 On November 5, 1993, the trial court sustained respondents’ demurrer without leave to amend. The court sustained the demurrer as to all eight counts for the following reasons: First, the court held appellant should have raised the alter ego liability claim in a joint debtor proceeding under section
 
 *1834
 
 989 of the Code of Civil Procedure. Second, it held only a bankruptcy trustee, and not an individual creditor, can pursue claims for fraudulent conveyance against a bankrupt corporation’s shareholders. In addition, the court sustained the demurrer without leave to amend to the counts for conspiracy to fraudulently transfer and an accounting of profits because they depended on, and were related to, the fraudulent conveyance action. Third, it held the doctrine of res judicata precluded the claims for intentional misrepresentation of fact, suppression of fact and conspiracy to defraud, since they arose out of the same transaction upon which the previous litigation was based. Fourth, the trial court also held the conversion action against the shareholders was precluded by operation of res judicata because appellant had raised a conversion claim in the previous action against the corporation.
 

 Discussion
 

 I.
 
 The Present Action Involves Different Primary Rights Than the One Involved in the Previous Action. Therefore, the Action Is Not Precluded by the Doctrine of Res Judicata.
 

 In sustaining respondents’ demurrer without leave to amend, the trial court held the doctrine of res judicata barred four of appellant’s eight theories of recovery: intentional misrepresentation of fact, suppression of fact, conspiracy to defraud and conversion. The court employed a transactional test, and held these claims were barred by operation of res judicata because they arose from the same transaction upon which the previous case was based. The court further held the conversion claim barred by res judicata because that claim merged with appellant’s judgment in the previous action.
 
 [1]
 

 A.
 
 The Primary Rights Test Is the Proper Method of Determining the Scope of a Cause of Action.
 

 Appellant contends the doctrine of res judicata is inapplicable where, as here, a case does not present the same cause of action as a prior case involving the same parties or their privies. Appellant argues California’s primary rights theory, and not the federal transactional theory, provides the appropriate definition to determine what constitutes a cause of action.
 
 *1835
 
 According to this test, the invasion of one primary right gives rise to a single cause of action. It contends the applicable California primary rights theory allows it to pursue all eight theories of recovery, since they involve a primary right different from the primary right involved in the first suit.
 

 Respondents, on the other hand, argue the trial court did not err in employing a transactional analysis for res judicata purposes. Respondents contend the doctrine of res judicata covers any “issues” which were or could have been litigated in the prior-action. They therefore suggest all eight theories of recovery alleged in appellant’s complaint should be barred and not only those identified by the court. However, respondents’ argument is contrary to established California law.
 

 The doctrine of res judicata “. . . precludes parties or their privies from relitigating
 
 the same cause of action
 
 that has been finally determined by a court of competent jurisdiction. . . .”
 
 (Frommhagen
 
 v.
 
 Board of Supervisors
 
 (1987) 197 Cal.App.3d 1292, 1299 [243 Cal.Rptr. 390], italics in original.) Thus, “[t]he question in this and similar cases, of course, is whether the attempted second litigation involves the ‘same cause of action.’ A ‘cause of action’ is conceived as the remedial right in favor of a plaintiff for the violation of one ‘primary right,’ ”
 
 (Sawyer
 
 v.
 
 First City Financial Corp.
 
 (1981) 124 Cal.App.3d 390, 399 [177 Cal.Rptr. 398].)
 

 Respondents rely on
 
 Wick
 
 v.
 
 Wick Tool Co.
 
 (1959) 176 Cal.App.2d 677 [1 Cal.Rptr. 531] and
 
 Sukut Construction, Inc.
 
 v.
 
 Cabot, Cabot & Forbes Land Trust
 
 (1979) 95 Cal.App.3d 527 [157 Cal.Rptr. 289], to argue the transactional test is the appropriate method of determining a cause of action. Their reliance on these decisions is misplaced, however, because both the
 
 Wick
 
 and
 
 Sukut
 
 courts employed the primary rights test.
 

 The
 
 Wick
 
 court stated, “[i]n the former action, the corporation’s (plaintiff s) cause of action, under its complaint, was its alleged
 
 right
 
 to rescind the license agreement. . . . M] In the present action, the corporation’s cause of action, under its cross-complaint, was its alleged
 
 right
 
 to recover damages by reason of circumstances involved in the making of the license agreement. . . .”
 
 (Wick
 
 v.
 
 Wick Tool Co., supra,
 
 176 Cal.App.2d 677, 685-686, italics added.) Similarly the
 
 Sukut
 
 court observed, “[t]he scope of the primary right controls the nature of the cause of action which was previously litigated. [Citation.]”
 
 (Sukut Construction, Inc.
 
 v.
 
 Cabot, Cabot & Forbes Land Trust, supra,
 
 95 Cal.App.3d 527, 531.)
 

 Notwithstanding respondents’ contention, the firmly settled rule in California for determining a cause of action is the primary rights theory. (See 4
 
 *1836
 
 Witkin, Cal. Procedure (3d ed. 1985) Pleading § 23 et seq., p. 66 et seq. and cases cited.) In an earlier case, we explained the rule as follows: “ ‘To determine the scope of causes of action, California courts employ the ‘primary rights’ theory. Under this theory, the underlying right sought to be enforced determines the cause of action. In determining the primary right, “the significant factor is the harm suffered.” [Citation.]’ ”
 
 (Craig
 
 v.
 
 County of Los Angeles
 
 (1990) 221 Cal.App.3d 1294, 1301 [271 Cal.Rptr. 82], quoting
 
 Takahashi
 
 v.
 
 Board of Education
 
 (1988) 202 Cal.App.3d 1464, 1474 [249 Cal.Rptr. 578].)
 

 Accordingly, respondents’ argument the trial court correctly employed the transactional test is without merit. (See also
 
 O’Neil
 
 v.
 
 General Security Corp.
 
 (1992) 4 Cal.App.4th 587, 602, fn. 7 [5 Cal.Rptr.2d 712].)
 

 B.
 
 The Claims in the Present Case Sounding in Tort Involve a Different Primary Right Than the Primary Right Involved in the Prior Case.
 

 Appellant contends the prior case involved a different primary right. It argues the previous case involved a cause of action for breach of contract by the corporation while the present case alleges tortious conduct by the shareholders which prevented it from collecting on its judgment from the first case. It further argues res judicata does not bar separate actions based on the same factual setting when separate primary rights are involved.
 

 In support of this contention, appellant relies on the decision in
 
 Sawyer
 
 v.
 
 First City Financial Corp., supra,
 
 124 Cal.App.3d 390. In
 
 Sawyer,
 
 vendors brought suit against purchasers and encumbrancers for breach of contract on a note, deed of trust, and loan and development agreement. After entry of a final judgment in favor of defendants, the vendors sued in tort for an alleged conspiracy among defendants to conduct a sham foreclosure sale.
 

 The court held the two actions involved distinct primary rights. It stated, “one’s breach of contract by failing to pay a note violates a ‘primary right’ which is separate from the ‘primary right’ not to have the note stolen.”
 
 (Sawyer
 
 v.
 
 First City Financial Corp., supra,
 
 124 Cal.App.3d at p. 402.) “While the monetary loss may be measurable by the same promissory note amount, and hence in a general sense the same ‘harm’ has been done in both cases, theoretically the plaintiffs have been ‘harmed’ differently by tortious conduct destroying the value of the note, than by the contractual breach of simply failing to pay it. We conclude, therefore, Sawyer II is based upon a separate and severable cause of action from that litigated in Sawyer I. . . .”
 
 (Id.
 
 at p. 403.)
 

 
 *1837
 
 We find the situation here to be analogous to the situation presented in
 
 Sawyer
 
 for purposes of California’s primary rights analysis. Similar to
 
 Sawyer
 
 here the prior action was for breach of contract by the respondent corporation. In
 
 Sawyer,
 
 the second suit sought to protect the vendors’ right to be free from tortious conduct destroying the value of the contract. Here, the second suit seeks to vindicate appellant’s right to be free from the shareholders’ tortious conduct which unfairly deprived it of the value of its judgment. We find, as did the
 
 Sawyer
 
 court, the right to have contractual obligations performed is distinct from the right to be free from tortious behavior preventing collection of a judgment.
 

 In addition, the proof required at trial will differ considerably from that required in the prior suit. While in the prior suit appellant had to establish a breach of the provisions of the contract, here appellant will need to show tortious behavior by the individual shareholders. Appellant will need to establish the individual shareholders fraudulently conveyed corporate assets, conspired to fraudulently transfer those assets, suppressed facts, conspired to defraud, and converted corporate property to their own benefit. Thus, the present action simply “rests upon a completely separate set of facts.”
 
 (Sawyer
 
 v.
 
 First City Financial Corp., supra,
 
 124 Cal.App.3d 390, 402.)
 

 In the previous action, the harm suffered by appellant was the breach of its contract, and the wrong committed was the respondent corporation’s failure to comply with the contract. The fact appellant included various theories of recovery (i.e., breach of contract, conversion, common counts, declaratory relief) does not change the primary right at issue in the action. As the court observed in
 
 Eichman
 
 v.
 
 Fotomat Corp.
 
 (1983) 147 Cal.App.3d 1170 [197 Cal.Rptr. 612], “. . . if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.”
 
 (Eichman
 
 v.
 
 Fotomat Corp., supra,
 
 147 Cal.App.3d at pp. 1174-1175.)
 

 The converse is also true; namely, cases involve distinct and separate primary rights where the injuries and wrongs associated with the two cases differ, regardless of the theories of recovery pleaded. We are guided by our decision in
 
 Craig
 
 in which we observed, “[i]f the second action involves a different cause of action, rather than a different legal theory, the [res judicata] doctrine will not apply.”
 
 (Craig
 
 v.
 
 County of Los Angeles, supra,
 
 221 Cal.App.3d 1294,1299.) In the first action the harm alleged was breach of contractual obligations. In the present case the harm suffered by appellant
 
 *1838
 
 is respondents’ alleged tortious conduct which has prevented satisfaction of the judgment it won in the first action.
 
 [2]
 
 Although appellant pleads various theories of recovery, they all address the same legal wrong—respondents’ tortious conduct preventing appellant from collecting on its judgment. Some of these theories happen to bear the same name as theories pleaded in the first case. But the primary right they embody is different and thus res judicata does not apply.
 

 Based on the factual allegation of the complaint, we conclude appellant has not split its cause of action, and the doctrine of res judicata does not
 
 *1839
 
 preclude any of the eight theories pleaded by appellant.
 
 [3]
 
 Accordingly, we hold the trial court erred in sustaining respondents’ demurrer without leave to amend to the claims for intentional misrepresentation of fact, suppression of fact, conspiracy to defraud and conversion.
 

 II.
 
 Appellant May Maintain an Action Against Individual Shareholders on an Alter Ego Theory Outside of a Joint Debtor Proceeding.
 

 The trial court sustained respondents’ demurrer without leave to amend to the alter ego claim because it held the action should have been brought in a joint debtor proceeding pursuant to Code of Civil Procedure section 989.
 
 [4]
 
 Appellant contends an action against individual shareholders on an alter ego theory may be brought outside of a joint debtor proceeding. Respondents argue an alter ego action can be brought only to enforce a prior judgment. They argue appellant has not based its complaint on the prior judgment but rather seeks to retry the first case.
 

 We find an action to establish alter ego liability is not restricted to joint debtor proceedings under section 989. We therefore conclude the trial court erred in sustaining respondents’ demurrer without leave to amend to this count.
 

 Section 989 states: “When a judgment is recovered against one or more of several persons, jointly indebted upon an obligation, by proceeding as provided in Section 410.70, those who were not originally served with the
 
 *1840
 
 summons, and did not appear in the action, may be summoned to appear before the court in which such judgment is entered to show cause why they should not be bound by the judgment, in the same manner as though they had been originally served with the summons.” Section 410.70 provides: “In an action against two or more persons who are jointly, jointly and severally, or severally liable on a contract, the court in which the action is pending has jurisdiction to proceed against such of the defendants as are served as if they were the only defendants.”
 

 These statutory provisions “only appl[y] where the alleged joint debtor was joined as a party and a cause of action was stated against him.” (8 Witkin, Cal. Procedure,
 
 supra,
 
 Enforcement of Judgment, § 391, p. 335.) Thereafter, “a plaintiff may, after final judgment, obtain a hearing to show cause in order to establish . . . individual liability. Under this procedure the plaintiff obtains a court order adding the owner’s name as a judgment debtor.” (Comment,
 
 Res Judicata and Collateral Estoppel Beneath the Corporate Veil, supra,
 
 66 Cal.L.Rev. 1093, 1096, fn. omitted.) This proceeding is useful in cases where more than one party is indebted upon an obligation and the plaintiff names all of the parties as defendants but is unable to effect personal service of summons, e.g., because one of the parties is a nonresident. Section 989 permits the trial court that heard and decided the case to bring the joint debtor before that court to show cause why he or she should not be bound by the judgment.
 

 Despite the fact a party may bring an action alleging alter ego liability in a joint debtor proceeding under section 989
 
 (Silverman
 
 v.
 
 Superior Court
 
 (1988) 203 Cal.App.3d 145 [249 Cal.Rptr. 724]), decisional authority supports the finding proceedings under this section are permissive and not mandatory. Indeed, respondents point to no authority making joint debtor proceedings the exclusive means to establish alter ego liability in this context.
 

 Where appropriate a party may bring a separate proceeding to amend the judgment to name the true judgment debtor.
 
 (Mirabito
 
 v.
 
 San Francisco Dairy Co.
 
 (1934) 1 Cal.2d 400, 406 [35 P.2d 513];
 
 Thomson
 
 v.
 
 L.C. Roney & Co.
 
 (1952) 112 Cal.App.2d 420, 425 [246 P.2d 1017];
 
 Marcus
 
 v.
 
 Superior Court
 
 (1977) 75 Cal.App.3d 204, 211 [141 Cal.Rptr. 890]; Comment,
 
 Res Judicata and Collateral Estoppel Beneath the Corporate Veil, supra,
 
 66 Cal.L.Rev. 1093, 1097.) Alternatively, a party may bring a wholly separate action against an individual shareholder on an alter ego theory to enforce a prior judgment against the corporation. For example, in
 
 Taylor
 
 v.
 
 Newton
 
 (1953) 117 Cal.App.2d 752 [257 P.2d 68], the plaintiff brought suit against
 
 *1841
 
 a corporate defendant and an individual defendant on an alter ego theory based on a judgment against the individual defendant. The plaintiff alleged the individual had transferred his property to the corporation, thereby “unjustly depriving] plaintiff of money due her. . . .”
 
 (Taylor
 
 v.
 
 Newton, supra,
 
 117 Cal.App.2d 752, 756.) The court held the plaintiff could maintain the action against the corporate defendant and the individual defendant based on the prior judgment on an alter ego theory.
 

 Respondents contend
 
 Taylor
 
 is distinguishable because in that action plaintiff sought to enforce a prior judgment, but here appellant is attempting to retry the first case. We disagree.
 

 We find the situation in the case at bar to resemble the facts of
 
 Taylor
 
 in every critical respect.
 
 Taylor
 
 involved a prior judgment against the individual and a subsequent suit to enforce the judgment against the corporation as the alter ego of the individual.
 
 (Taylor
 
 v.
 
 Newton, supra,
 
 117 Cal.App.2d 752, 759.) The case at bar involves a prior judgment against the respondent corporation and a second suit to enforce that judgment against the shareholders for whom the corporation was an alter ego. The first suit established contractual liability. The second suit must establish the factual basis to justify piercing the corporate veil. Although both suits will involve some of the same factual matters and concern the same contractual obligation, their purpose and outcome are not the same.
 

 The purpose behind the alter ego doctrine is to declare the individual and the corporation are the same entity. Therefore, the fact
 
 Taylor
 
 involved a prior judgment against the individual and not the corporation does not change the outcome. The court in
 
 Wenban Estate, Inc.
 
 v.
 
 Hewlett
 
 (1924) 193 Cal. 675, 696 [227 P. 723] stated the rule as follows: “While it is the general rule that a corporation is an entity separate and distinct from its stockholders, with separate, distinct liabilities and obligations, nevertheless there is a well-recognized and firmly settled exception to this general rule, that, when necessary to redress fraud, protect the rights of third persons, or prevent a palpable injustice, the law and equity will intervene and cast aside the legal fiction of independent corporate existence, as distinguished from those who hold and own the corporate capital stock, and deal with the corporation and stockholders as identical entities with identical duties and obligations.”
 

 We conclude an action to establish alter ego liability is not limited to a joint debtor proceeding. Accordingly, we hold the trial court erred in sustaining respondents’ demurrer without leave to amend to the count for alter ego liability on the basis this theory had to be pursued in a joint debtor proceeding.
 

 
 *1842
 
 III.
 
 The Trial Court Erred in Sustaining Respondents’ Demurrer Without Leave to Amend to Appellant’s Fraudulent Conveyance Action Brought After the Close of the Corporate Debtor’s Bankruptcy Case.
 

 The trial court sustained respondents’ demurrer without leave to amend to the counts for fraudulent conveyance, conspiracy to fraudulently transfer, and an accounting of profits because it held only a bankruptcy trustee, and not an individual creditor, could pursue a fraudulent conveyance action. Appellant contends an individual creditor may maintain a fraudulent conveyance action against corporate shareholders where, as here, the corporate debtor’s bankruptcy case is closed. Respondents argue the trial court properly sustained the demurrer to the complaint because a chapter 7 bankruptcy trustee “owns” the fraudulent conveyance action as part of the estate, and only the trustee may bring such an action.
 

 Respondents correctly point out only a chapter 7 bankruptcy trustee, and not an individual creditor, may pursue a fraudulent conveyance action under 11 United States Code section 548 during the pendency of the bankruptcy case. However, respondents’ argument does not address the situation presented in the case at bar, namely where the bankruptcy case is closed. Indeed, the cases respondents rely on for the proposition a bankruptcy trustee has exclusive authority,
 
 In re Vitreous Steel Products Co.
 
 (7th Cir. 1990) 911 F.2d 1223,
 
 In re S & D Foods, Inc.
 
 (Bankr.D.Colo. 1992) 144 Bankr. 121, and
 
 In re Sinder
 
 (Bankr.S.D.Ohio 1989) 102 Bankr. 978, do not apply here since they involved actions to set aside fraudulent conveyances brought while a bankruptcy case was still open and under the jurisdiction of the bankruptcy court.
 

 In September 1992 Bakara filed a chapter 7 bankruptcy petition. In June 1993, the trustee filed a no-asset report and report of abandonment of burdensome property. The bankruptcy court closed the case upon the filing of the no-asset report.
 
 [5]
 

 “A no-asset report is tantamount to an abandonment of the trustee’s interest in the property.”
 
 (In re Alt
 
 (Bankr.W.D. Wis. 1984) 39 Bankr. 902,
 
 *1843
 
 903.) “The general rule in this area is well settled—once a trustee abandons property, the abandonment is irrevocable.”
 
 (In re Hunter
 
 (Bankr.S.D. Ohio 1987) 76 Bankr. 117, 118;
 
 In re Lintz West Side Lumber, Inc.
 
 (7th Cir. 1981) 655 F.2d 786, 789.) If property has been abandoned, title to the property reverts back to the debtor as if it had never been held by the trustee.
 
 (In re Tarpley
 
 (Bankr.M.D. Tenn. 1980) 4 Bankr. 145, 146.) “Thus, the trustee is divested of control of the property because the property is no longer part of the bankruptcy estate.”
 
 (In re Hunter, supra,
 
 76 Bankr. at p. 118.)
 

 Under these rules, once the trustee filed his no-asset report and the bankruptcy court closed the case, the trustee was divested of any interest in, and of title to, any claim the estate may have had for fraudulent conveyance. In these circumstances, any protection from the automatic stay from prepetition claims against the debtor or its property is terminated once property is no longer property of the bankruptcy estate and the case is closed. Title 11 United States Code section 362(c) provides in pertinent part:
 

 “(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and
 

 “(2) the stay of any other act under subsection (a) of this section continues until the earliest of—
 

 “(A) the time the case is closed; . . .”
 

 Thus, by abandoning any potential assets of the debtor and the closing of the bankruptcy case, appellant is not precluded by the automatic stay from pursuing an action against persons who are nondebtors and against property which, if it ever was scheduled as property of the estate, is no longer property of the estate. (See, e.g.,
 
 In re Torrez
 
 (Bankr.E.D.Cal. 1991) 132 Bankr. 924 [no violation against automatic stay provision to foreclose on property not listed as an asset on bankruptcy schedules and held by non-debtors].)
 

 There are, however, exceptions to the rule abandonment by the trustee is absolute and final. For example, if a potential asset is concealed from the trustee, or information concerning the potential asset has not been properly disclosed so the trustee could make an informed decision concerning abandonment, a trustee may apply to the court for an order revoking an order of abandonment and to reopen the case. (See, e.g.,
 
 In re Alt, supra,
 
 39 Bankr. at p. 904;
 
 In re Lintz West Side Lumber, Inc., supra,
 
 655 F.2d 786, 791.)
 

 
 *1844
 
 Section 350 of title 11 of the Bankruptcy Code provides:
 

 “(a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.
 

 “(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.”
 

 Thus, upon a showing of cause by the trustee, or other interested person, it is within the discretion of the bankruptcy court to reopen the case in order to administer the omitted potential asset. (11 U.S.C. § 350 (b);
 
 In re Johnson
 
 (8th Cir. 1961) 291 F.2d 910 [petition should show probability, administrability and substance of alleged additional assets].) In making the decision whether the circumstances warrant reopening of a bankruptcy case the bankruptcy court will consider such factors as the public policy in favor of the prompt administration of a case, and in favor of the finality of legal proceedings, as well as potential prejudice to creditors. (See 2 Collier on Bankruptcy (1994) Closing and Reopening Cases, § 350 et seq., p. 350-1 et seq. and cases cited.)
 

 However, even assuming this case presents adequate factual circumstances to reopen Bakara’s bankruptcy case, the statute of limitations would be a bar to any action by the trustee to set aside an alleged fraudulent conveyance. Section 546 of title 11 of the Bankruptcy Code sets forth the applicable statute of limitations on the avoiding powers of a trustee. This section provides in pertinent part:
 

 “(a) An action or proceeding under section . . . 548 [trustee’s power to avoid fraudulent transfers and obligations]
 
 may not be commenced after the earlier of—
 

 “(1) two years after the appointment of a trustee . . . ; or
 

 “(2) the time the case is closed or dismissed.” (Italics added.)
 

 As explained by a noted authority on bankruptcy law—
 

 “Section 546(a) applies to suits brought in reliance on the trustee’s avoiding powers under section[] . . . 548, as well as his right to recover a setoff under section 553. In any such action or proceeding, the statute bars suits brought after the
 
 earlier
 
 of two dates: two years after the trustee’s appointment, or the time the case is closed or dismissed. Ordinarily the trustee will have two years from his appointment to commence such an action, but if the case should be ‘closed or dismissed’ in this period, the suit will be time-barred.
 

 
 *1845
 
 “. . . Thus, a suit by the trustee ordinarily cannot be instituted after two years have elapsed from the date of the trustee’s appointment, irrespective of the later reopening of the estate.” (4 Collier on Bankruptcy (1994) Creditors, The Debtor, and the Estate, § 546.02, pp. 546-8.1-546-10, italics in original, fns. omitted.)
 
 [6]
 

 Because the trustee chose to abandon any action to recover for the alleged fraudulent conveyance of the debtor’s property, any such property is no longer property of the estate subject to the jurisdiction of the bankruptcy court or to the automatic stay provisions of 11 United States Code section 362. In addition, the bankruptcy trustee is time barred from bringing any action to set aside a fraudulent conveyance under the provisions of 11 United States Code section 546(a) in a case which is closed and not reopened. Accordingly, it was error for the trial court to sustain the demurrer without leave to amend to appellant’s claims for fraudulent conveyance and related claims, on the basis the bankruptcy trustee had exclusive jurisdiction.
 

 Disposition
 

 The judgment is reversed. Appellant to recover its costs of appeal.
 

 Lillie, P. J., and Woods (Fred), J., concurred.
 

 [1]
 

 Appellant appeals from a judgment dismissing its complaint following the sustaining of respondents’ demurrer without leave to amend. For purposes of appeal we accept as true the properly pleaded factual allegations of the complaint.
 
 (Thompson
 
 v.
 
 County of Alameda
 
 (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].) Furthermore, the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties. (Code Civ. Proc., § 452;
 
 King
 
 v.
 
 Central Bank (1977)
 
 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].)
 

 [2]
 

 The complaint in the first suit alleged various theories of recovery for breach of contract. The factual allegations supporting the breach of contract claim stated: “Defendant. . . failed and refused to pay for merchandise delivered to defendant at defendant’s instance and request. . . .” The operative language supporting the claim for common counts stated Bakara became indebted on an open book account for money due “for goods, wares, and merchandise sold and delivered to defendant and for which defendant promised to pay plaintiff.” The claim for conversion alleged: “Upon receiving delivery of said furniture, defendant converted the same to its own use by initially retaining the furniture without compensation to plaintiff and ultimately by selling the entirety of said furniture and retaining the proceeds therefrom, thereby converting said proceeds to its own use.” The request for declaratory relief alleged “defendant’s initial breach of October 23, 1989, in its failure to pay for the second shipment of furniture sent by plaintiff on July 25, 1989, within 90 days pursuant to the terms of the contract was material and terminated the contract.”
 

 By contrast, the complaint in the present action alleged various theories to recover for the alleged tortious conduct by respondents which prevented appellant from collecting on its judgment in the original suit.
 

 First the complaint alleges the respondent corporation is the alter ego of the individual shareholders. The rest of the claims in the complaint relate to, and are based in part on, the allegations supporting the claim for fraudulent transfer of property. The operative language alleges when the complaint in the first action was filed “defendant corporation was in possession and in control of certain personal property and inventory, utilized in the conduct of its furniture business. [5] 30. . . . [0]n or about January of 1991, defendant corporation transferred its personal property and inventory to the individual defendants. . . . [ft] . . . “32. . . . [T]he transfer was made with an actual intent to hinder, delay, or defraud all of defendant corporation’s then and future creditors, including plaintiff in the collection of their claim. H] . . .
 

 “38. . . . [T]he above-described property was received by the individual defendants . . . , with knowledge that defendant corporation intended to hinder, delay, and defraud the collection of plaintiff’s aforementioned claim. . . .”
 

 Similarly the claim for misrepresentation of fact alleges respondents “intentionally and knowingly represented to plaintiff that the individual defendants would be responsible for all obligations of defendant corporation, with the full knowledge that the defendant corporation was the alter ego of the individual defendants, . . . with the full intention to transfer the personal property, funds, and inventory of defendant corporation to the individual defendants. . . .”
 

 The claims for suppression of fact, conversion and conspiracy to defraud also allege respondents fraudulently transferred corporate property to themselves to avoid creditor claims and judgment creditors.
 

 [3]
 

 Respondents’ argument on appeal suggests the judgment of dismissal can be upheld on the ground res judicata barred all the claims alleged in the complaint. We disagree.
 

 This case asserts claims which seek to vindicate different primary rights than the one litigated in the prior action. As noted, the first suit was based on the respondent corporation;’s obligation to comply with its contract. By contrast, the present action primarily involves respondents’ obligation to refrain from tortious conduct which prevents appellant from collecting on its prior judgment in that case.
 

 The present suit also involves claims related to the separate and independent right to execute on the judgment, for example, appellant’s claim of alter ego liability. The right to have contractual obligations fulfilled is clearly distinct from the right to execute on a judgment, an entirely different type of obligation.
 

 Moreover, the preclusive effect of res judicata may be inappropriate for a wholly different reason. Namely, different parties are involved in the two suits.
 
 (Vanguard Recording Society
 
 v.
 
 Fantasy Records
 
 (1972) 24 Cal.App.3d 410 [100 Cal.Rptr. 826] [rule of res judicata inapplicable to persons only in privity]; 4 Witkin, Cal. Procedure,
 
 supra,
 
 Pleading § 35, p. 78 [rule of merger or bar only applies to actual parties]; see also Comment,
 
 Res Judicata and Collateral Estoppel Beneath the Corporate Veil
 
 (1978) 66 Cal.L.Rev. 1093, 1098-1099 [“Even an alter-ego pierce claims only that the owner and corporation are the same in practice, not in theory. The second suit, therefore, is proper since it is against a different party.”].)
 

 [4]
 

 All further statutory references are to the Code of Civil Procedure unless otherwise indicated.
 

 [5]
 

 The report filed by the trustee stated: “The undersigned, duly appointed Chapter 7 Trustee of the estate of the above-mentioned debtor(s), reports that he/she has neither received any property nor paid any money on account of this estate; that he/she has made diligent inquiry into the whereabouts of property belonging to the estate; that he/she has no objections to the exemptions claimed; and that assets scheduled and not claimed exempt are encumbered beyond value, or are otherwise of negligible value and the Trustee asserts no interest in them.
 

 “Wherefore, the Trustee requests that this report be approved, that he/she be discharged from office, and his/her bond exonerated, and for all other applicable orders.”
 

 [6]
 

 This interpretation of the statute of limitations on an action by the trustee to set aside a fraudulent conveyance represents the majority view. We are aware of authority which would extend the time for a trustee to commence a fraudulent conveyance action in a reopened case presenting compelling facts of mistake or active fraud on the trustee. A minority of courts would allow a trustee to commence an action to avoid a fraudulent conveyance where the bankruptcy case has been closed,
 
 provided
 
 the bankruptcy court exercises its discretion to reopen the case, and
 
 provided
 
 any time remained from the two-year limit at the time the case was closed. (See, e.g.,
 
 In re Herzig
 
 (Bankr. 9th Cir. 1989) 96 Bankr. 264, 266-267;
 
 White
 
 v.
 
 Boston
 
 (Bankr.S.D. Ind. 1989) 104 Bankr. 951.)
 

 This minority view, however has no application to the case at bar. From the transcript of the proceedings in this case it appears the allegation of respondents’ fraudulent conveyance of the debtor’s assets was investigated and rejected by the bankruptcy trustee. Accordingly, the general rules of abandonment apply. (See, e.g.,
 
 In re Hunter, supra,
 
 76 Bankr. 117 [abandonment final where trustee had full opportunity to discover potential preferential transfer];
 
 In re Hoffman
 
 (Bankr.W.D. Ark. 1986) 70 Bankr. 155 [abandonment irrevocable where no mistake or fraud in original abandonment]; see also
 
 In re Reed
 
 (9th Cir. 1991) 940 F.2d 1317, 1321 [no-asset report results in abandonment when the court closes the case].)