Filed 4/25/13  Pantazis v. Oakland Convention and Visitors Bureau CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| ATHENA PANTAZIS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>OAKLAND CONVENTION AND VISITORS BUREAU,<br><br>    Defendant and Respondent. | A135256<br><br>(Alameda County<br>Super. Ct. No. RG11573958) |


In 1993, while employed by the Oakland Convention and Visitors Bureau (OCVB1), Athena Pantazis sustained a workplace injury.  She was terminated the following year.  She obtained a workers' compensation liability award in 1998 on her complaint for retaliatory termination, and a monetary award in 2003.  In the meantime, her employer changed its name to the Oakland Convention and Visitors Authority.  A new corporation was formed under the name Oakland Convention and Visitors Bureau (OCVB2) in 1999.  Pantazis attempted to satisfy her judgment from the accounts of OCVB2.  The Workers' Compensation Appeals Board (WCAB) concluded that OCVB2 was not the judgment debtor and this court denied a writ petition challenging that decision.  Pantazis filed the instant civil action in the superior court in 2011, seeking to hold OCVB2 liable for the debt under different legal theories.  The trial court ruled that the principles of res judicata barred the instant action.  We agree and affirm.

# I. BACKGROUND

The following facts are taken from WCAB decisions, of which the trial court took judicial notice.

OCVB1 was established as a California corporation in 1979. The purpose of the corporation was to promote tourism and convention business in the City of Oakland (City).

OCVB1 hired Pantazis in June 1993. On November 20, 1993, Pantazis sustained a foot injury while working as a receptionist and she was terminated in November 1994.

In July 1995, OCVB1 changed its name to the Oakland Convention and Visitors Authority (hereafter OCVB1/OCVA). The name change reflected a merger of OCVB1's activities with the operation of the City's convention center. OCVB1/OCVA also operated a parking garage from 1995 to 1998.

In October 1995, Pantazis filed a workers' compensation claim alleging retaliatory termination (in November 1994) in violation of Labor Code section 132a. She identified her employer as the "Oakland Convention and Visitors' Bureau." In February 1998, a liability award was issued in Pantazis's favor and against "Oakland Convention and Visitors Bureau."

In June 1999, a new corporation was formed with the name, "Oakland Convention and Visitors Bureau" (OCVB2). The stated purpose of the corporation was similar to OCVB1/OCVA's purpose, to promote tourism and convention business in the City, and at least one officer of OCVB1/OCVA became a director of OCVB2. However, OCVB2 hired a new executive director and staff, it had a different funding structure, and it never operated the convention center or parking garage. The City shifted funding from OCVB1/OCVA to OCVB2, apparently due to undercapitalization of the former; however, there was a period during the formation of OCVB2 when the City was funding both organizations. OCVB1/OCVA ceased operations in 1998 but the corporation was never formally dissolved.

In February 2003, a monetary award was issued in Pantazis's favor in the amount of $130,426.47, apparently against "Oakland Convention and Visitors Bureau." Pantazis

obtained a civil judgment on this award in Alameda County Superior Court and the sheriff levied on OCVB2's bank accounts. OCVB2 sought review by the WCAB on the issue of whether OCVB2 was the proper judgment debtor in the case.

In December 2004, the WCAB stayed enforcement of the award and directed the WCJ to "determine the correct entity that will actually be liable for [Pantazis's] . . . award." "[T]he real issue comes down to whether the present entity, [OCVB2], is the same entity that was found to have violated Labor Code section 132a. If not, there is an outstanding issue as to whether [OCVB2] has liability under a legal theory, e.g. contract, *alter ego*, etc., for that entity's violation of section 132a."

In 2006, the WCJ conducted an evidentiary hearing and ruled that OCVB1/OCVA and OCVB2 were jointly and severally liable for the award. "There remains sufficient identity of officers and interest between the 1979 corporation and 1999 corporation to require satisfaction of the final award by [OCVB2] as an 'alter ego' and successor in interest of the 1979 corporation."

In December 2006, the WCAB reversed, ruling that OCVB2 was a separate organization from OCVB1/OCVA and there was no showing that OCVB2 was formed to avoid the liabilities of OCVB1/OCVA. The WCAB rescinded certain aspects of the WCJ's ruling, and substituted a finding that "13. The identity of officers and interest between the [OCVB1] and [OCVB2] is not sufficient to require satisfaction of the final award by [OCVB2] as 'alter ego' and successor in interest of [OCVB1]." The WCAB dismissed OCVB2 as a party defendant. The WCAB denied Pantazis's petition for reconsideration, and in July 2007 this court denied her writ petition challenging the WCAB decision.[1]

---

[1] We deny OCVB2's September 11, 2012 request that we take permissive judicial notice of Pantazis's writ petition and OCVB2's answer because we conclude the content of those papers are not relevant to the issues before us. (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on other grounds by *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.)

*Complaint*

On May 3, 2011, Pantazis filed a complaint against both OCVB1/OCVA and OCVB2. Pantazis alleges that she collected only $14,585.93 from OCVB1/OCVA and was told there were no more funds available to satisfy her claim. She alleges OCVB1/OCVA was for all practical purposes defunct, having been "made insolvent, property and assets out of which the judgment could be satisfied having been transferred to [OCVB2] enabling Defendants to avoid [OCVB1] creditors." She further alleges that "the true extent of similarity between the membership, directorate and officers, and business operations of [OCVB1/OCVA], and [OCVB2], was not disclosed by the Bureau entities" during the workers' compensation proceedings. "Evidence in those proceedings was limited to testimony bearing on an issue raised by [OCVB2] under Minton v. Cavaney (1961) 56 Cal.2d 576."

Pantazis states five causes of action: (1) "Continuation – Surviving Corporation Liable for Predecessor Debts"; (2) "De Facto Merger – Surviving Corporation Liable for Debts"; (3) "Fraud on Creditors – Successor Liability for Predecessor Debts and Obligations"; (4) "Assumption of Liability – Corporate Successor Liable for Predecessor Liabilities and Obligations"; and (5) "Successorship Liability – Employment Discrimination."

*Demurrer*

OCVB2 demurred to the complaint, arguing all of Pantazis's claims were barred as res judicata, having already been litigated in the workers' compensation proceedings. Pantazis argued in opposition that the 2006 WCAB decision "was expressly limited to different issues, namely, whether the [WCJ] had properly applied the doctrine of alter ego (piercing the corporate veil) under Minton v. Cavaney (1961) 56 Cal.2d 576 and the responsible party disclosure mandate of Coldiron v. Compuware Corp. (2002) 67 Cal. Comp. Cases 289. . . . The issues raised in this case . . . are properly brought in a post-judgment action seeking to amend the judgment—whether the new OCVB is a successor to the old OCVB as a continuation or reincarnation . . . , by virtue of de facto merger . . . ,

4

due to a fraud on creditors . . . , or per the doctrine of successorship specific to employment discrimination . . . ."

The trial court ruled that Pantazis's claims were barred as res judicata. "In this action, [Pantazis] seeks to hold [OCVB2] liable for a 1998 workers' compensation award against [OCVB1/OCVA]. In [Pantazis's] prior proceedings before the [WCAB], [she] sought a determination that [OCVB2] was liable for the award against [OCVB1/OCVA], as [OCVB1/OCVA's] purported alter ego and successor. [Citation.] The WCAB determined that [OCVB2] was not the alter ego or successor of [OCVB1/OCVA], and that determination is final. [Citation.] . . . [¶] . . . [T]he prior WCAB proceedings and this action involve the exact same claim, i.e., whether [OCVB2] is liable for the 1998 workers' compensation award against [OCVB1/OCVA]."

## II.    DISCUSSION

We review an order sustaining a demurrer de novo. (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1080.) "When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

" 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen*).) "A workers' compensation judgment can have res judicata effect if it meets all the doctrine's other essential elements. (*Unruh v. Truck Insurance Exchange* (1972) 7 Cal.3d 616, 633.) . . . [¶] . . . [WCAB] is a constitutional court in California, and . . . its decisions may thus . . . be

5

given conclusive effect.  [Citation.]" (*Hughes v. Atlantic Pacific Construction Co.* (1987) 194 Cal.App.3d 987, 1002.)

"A clear and predictable res judicata doctrine promotes judicial economy.  Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date.  ' "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." '  [Citation.]  A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration.'  [Citation.]" (*Mycogen, supra,* 28 Cal.4th at p. 897, italics omitted.)

For purposes of applying the res judicata doctrine, a "cause of action" is determined under the primary right theory.  "The primary right theory . . . provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty.  [Citation.]  The most salient characteristic of a primary right is that it is indivisible:  the violation of a single primary right gives rise to but a single cause of action.  [Citation.] . . . [¶] As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered.  [Citation.]  It must therefore be distinguished from the legal theory on which liability for that injury is premised:  'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.'  [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681–682, italics omitted.)

Pantazis argues the "primary right" adjudicated in the workers' compensation proceedings was her right not to be terminated for asserting her rights under the workers' compensation statutes.  Because she is not asserting that right in the instant action, she argues, the instant action is not barred as res judicata.  Instead, she is now litigating a different primary right:  her right to enforce the workers' compensation judgment against OCVB2.  In support of this argument, Pantazis cites *Brenelli Amedeo, S.P.A. v. Bakara*

6

*Furniture, Inc.* (1994) 29 Cal.App.4th 1828 (*Brenelli*). In *Brenelli*, the plaintiff obtained a money judgment against a corporation. (*Id.* at p. 1833.) After the corporation declared bankruptcy and failed to satisfy the judgment, the plaintiff filed a second action against the corporation and certain individual shareholders, alleging alter ego liability, fraudulent conveyance, conspiracy to defraud and other claims. (*Ibid.*) The court held the second action was not barred because it involved a different primary right: "the prior action was for breach of contract by the respondent corporation. . . . [T]he second suit seeks to vindicate appellant's right to be free from the shareholders' tortious conduct which unfairly deprived it of the value of its judgment." (*Id.* at p. 1837; see *id.* at pp. 1837–1839; see also *Taylor v. Newton* (1953) 117 Cal.App.2d 752 [affirming judgment declaring company alter ego of judgment debtor without addressing res judicata issues]; *McClellan v. Northridge Park Townhome Owners Assn.* (2001) 89 Cal.App.4th 746, 752 [court properly decided alter ego issue in context of post-judgment motion to modify judgment and add judgment debtors].)

The critical difference between *Brenelli, supra,* 29 Cal.App.4th 1828 and this case is that enforceability of the judgment against individual shareholders was *not* litigated in the first action in *Brenelli*, whereas the enforceability of the judgment against OCVB2 *was* specifically litigated in the prior workers' compensation proceedings here. Having already litigated the issue in the workers' compensation proceeding, she cannot do so now. The final judgment in the workers' compensation action claim is res judicata, foreclosing her instant claim.[2]

---

[2] The procedural history of the instant case also distinguishes it from *Allied Fire Protection v. Diede Construction, Inc.* (2005) 127 Cal.App.4th 150 (*Allied Fire*), another case Pantazis discusses in her opening brief. *Allied Fire* holds that the res judicata doctrine does not apply to a second action that is based on facts that arose or were discovered (and could only have been discovered) after the filing of the complaint in the first action. (*Id.* at p. 155.) Notably, however, *Allied Fire* observed that rights that arise from facts that occur or are discovered after the filing of a complaint "*may* be asserted in a supplemental pleading" in that same action. (*Ibid.,* italics added.) "[I]f such a pleading is *not* filed a plaintiff is not foreclosed from asserting the rights in a subsequent action. [Citation.]" (*Ibid.,* italics added.) Implicit in this holding is the converse conclusion: if a

Pantazis argues that res judicata applies only if the identical issue was decided in the prior action.  She argues the current action is not barred by the doctrine because she raises new theories of OCVB2's liability for the workers' compensation judgment.  In support of this argument, Pantazis primarily cites *Eichler Homes, Inc. v. Anderson* (1970) 9 Cal.App.3d 224 (*Eichler*).  *Eichler*, however, applies collateral estoppel (issue preclusion), not res judicata (claim preclusion).[3]  Under the collateral estoppel doctrine, the identical issue must have been actually litigated in the prior action in order for a finding on that issue to be binding in the second action.  (*Id.* at pp. 232–233.)  Although the *Eichler* court wrote expansively in dicta that "[i]t is basic to the application of res judicata or collateral estoppel that the issue of the earlier action be *identical* to that in which the application is sought" (*id.* at p. 233), it is well established that under the res judicata doctrine all that matters is that the same *primary right* was adjudicated in the first action.  " '[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.' [Citation.]" (*Brenelli, supra,* 29 Cal.App.4th at p. 1837.)  Even remedies, defenses and issues related to the extent of a defendant's personal liability may be barred as res judicata if not raised in the first action.  (See

supplemental pleading *is* filed in the first action, the plaintiff would be foreclosed from asserting the same right in a subsequent action.  By analogy, in the instant case it may not have *necessary* to litigate the issue of OCVB2's liability before the WCAB.  However, once the issue *was* litigated in that proceeding, it became res judicata and could not be litigated again in a subsequent action.

[3] Pantazis also cites res judicata cases stating that the doctrine applies only to issues that were actually tendered in the first action.  However, these cases refer to "causes of action" (primary rights), not factual issues, that were tendered in the first action.  The cases therefore are consistent with the rule that a primary right adjudicated to final judgment in a prior action bars relitigation of the right in a second action, even if framed in new legal theories.  (See *Concannon v. Smith* (1901) 134 Cal. 14, 17–18; *Daugherty v. Board of Trustees of South Bay Union High School Dist.* (1952) 111 Cal.App.2d 519, 521–522; *City of San Diego v. California Water & Telephone Co.* (1945) 71 Cal.App.2d 261, 272, 275–276.)

*Mycogen, supra,* 28 Cal.4th at pp. 893, 896 [first action for declaratory relief and specific performance barred second action on same primary right but seeking damages]; *Sutphin v. Speik* (1940) 15 Cal.2d 195, 200–201 [defense not raised in first action could not be raised in second action on same primary right]; *Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 487–488 [issue of whether judgment against married couple could be collected from defendant wife's separate property was res judicata even though not raised in first action because it related to the extent of her personal liability to the plaintiff].)

In the workers' compensation proceedings, the parties litigated Pantazis's right to enforce the workers' compensation judgment against OCVB2 under any legal theory. The WCAB charged the WCJ to determine whether OCVB2 was "the same entity that was found to have violated Labor Code section 132a," or, if not, "whether [OCVB2] has liability under a legal theory, e.g., contract, *alter ego*, etc., for that entity's violation of section 132a." This charge clearly included contractual, corporate successor, tort, and any other theories of liability. Thus, whether these are conceived as different legal theories to enforce a single primary right (i.e., Pantazis's right to enforce the judgment against OCVB2) or different primary rights (cf. *Brenelli, supra,* 29 Cal.App.4th at pp. 1837–1839 [distinguishing between contract and tort primary rights]), all were adjudicated in the workers' compensation proceedings. Indeed, the parties actually presented evidence and legal arguments regarding the separate formal existence of the corporations, the separate substantive nature of the corporation (including the identity of their officers, directors and employees, their purposes and activities, their contractual relationships with the City, and their sources of funding), and the bona fide or wrongful purpose of forming the second corporation.

All of Pantazis's current claims seek to enforce the same primary right or rights. Her first cause of action ("Continuation – Surviving Corporation Liable for Predecessor Debts") alleges that OCVB1/OCVA caused the creation of OCVB2 and transferred its assets to OCVB2 for inadequate consideration; accordingly, Pantazis alleges, OCVB2 must be deemed a continuation of OCVB1/OCVA that remains liable for its debts. Her second cause of action ("De Facto Merger – Surviving Corporation Liable for Debts")

9

alleges based on the same facts that OCVB2 "was created as a result of a de facto merger" and therefore remains liable for OCVB1/OCVA's debts. Her third cause of action ("Fraud on Creditors – Successor Liability for Predecessor Debts and Obligations") alleges the intentional transfer of OCVB1/OCVA's business and assets to OCVB2 was a fraud on OCVB1/OCVA's creditors and OCVB2 should be deemed liable for OCVB1/OCVA's debts. Her fourth cause of action ("Assumption of Liability – Corporate Successor Liable for Predecessor Liabilities and Obligations") alleges that representations made by and to the City, OCVB1/OCVA and other parties involved in the creation of OCVB2 between 1997 and 1999 included implied or express agreements that OCVB2 would assume the liabilities and obligations of OCVB1/OCVA. Her fifth cause of action ("Successorship Liability – Employment Discrimination") alleges that because of the continuity between OCVB1/OCVA and OCVB2 and because OCVB2 was on notice of Pantazis's claim at the time of its formation, OCVB2 should be required to satisfy Pantazis's claim under fairness principles applicable to employment law. All of these claims seek to enforce Pantazis's right to obtain satisfaction of judgment from OCVB2 on theories of contract, corporate successorship, or tortious conduct. All inferably rely on facts that occurred before the workers' compensation proceedings on OCVB2's liability. Pantazis does not allege anything to the contrary. Pantazis alleges that relevant facts were not *disclosed* by OCVB1/OCVA or OCVB2 during those proceedings, but she does not allege they were not discoverable at that time.

Pantazis argues she was not given a fair opportunity to present these legal theories during the workers' compensation proceedings, which she claims were limited to the alter ego theory discussed in *Minton v. Cavaney* (1961) 56 Cal.2d 576 (*Minton*). (See *Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 344 [res judicata doctrine does not apply when party did not have fair opportunity to litigate issue in first action].) This argument is not supported by the record. As observed *ante*, the WCAB expressly charged the WCJ to determine whether OCVB2 was liable on the judgment under any legal theory. Pantazis cites to a WCJ order asking for briefing on the *Minton* case following the evidentiary hearing conducted by the WCJ. However, nothing in that order

10

indicates that the parties were *restricted* to the *Minton* alter ego theory when litigating OCVB2's potential liability.

### III.  DISPOSITION

The judgment is affirmed.  Pantazis must pay respondents' costs on appeal.


_____
Bruiniers, J.


We concur:


_____
Simons, Acting P. J.


_____
Needham, J.