Filed 2/14/25  Dowling v. Uriostegui CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GREGORY DOWLING, Individually and as Trustee, etc., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> ROB URIOSTEGUI, <br><br>     Defendant and Appellant. | B328982 <br><br> (Los Angeles County Super. Ct. No. 16STPB03890) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lee R. Bogdanoff, Judge.  Affirmed.

Rob Uriostegui, in pro. per., for Defendant and Appellant.

Gifford, Dearing & Abernathy and Henry H. Dearing for Plaintiff and Respondent.

# INTRODUCTION

Diane Uriostegui had a business plan: She would befriend elderly, ailing individuals, alienate them from their family, and exert undue influence to get them to sign new estate planning documents that disinherited their families and left their assets to her. When the individuals died, she would collect.

It worked in 2012 with a woman named June Downen. Diane (whom we call by her first name to distinguish her from her son, Rob Uriostegui, whom we call Rob to avoid confusion) caused Downen to become estranged from her son, got her to write letters to her son accusing him of engaging in illegal conduct and trying to get her money, and convinced her to leave her house to Diane. And it almost worked in 2015, when Diane caused Prescott Dowling to become estranged from his son Gregory Dowling (whom we call Prescott and Gregory, also to avoid confusion), got him to write letters to Gregory accusing him of engaging in illegal conduct and trying to get his money, and convinced him to leave his assets to Diane.

"Almost," because after Prescott died Gregory filed a petition in probate court challenging the amendments to the Dowling family trust that Diane had arranged a new lawyer to prepare and that made Diane the trustee and sole beneficiary of the trust. And Gregory prevailed. The probate court ruled that Diane obtained the trust amendments that gave her the Dowling family assets by undue influence and that Prescott lacked capacity to make those amendments. In the first appeal in this litigation, we affirmed the probate court's findings and orders removing Diane as trustee and naming Gregory as trustee, pursuant to the original trust documents that named him as the

sole trustee and beneficiary of the trust.  (*Dowling v. Uriostegui* (Mar. 16, 2020, B294046) [nonpub. opn.] (*Dowling I*).)

But not before Diane went on a spending spree and dissipated over $1 million in trust assets, including $250,000 in gifts to her son.  When the probate court ordered Diane to return the trust assets she had stolen and to submit an accounting of trust funds, Diane refused.  The probate court subsequently ordered Diane to pay Gregory as trustee over $1.2 million, plus interest.  We affirmed again.  (*Dowling v. Uriostegui* (Mar. 14, 2024, B323346) [nonpub. opn.] (*Dowling II*).)  But not before Diane got another lawyer to help on remand and in her second appeal:  Her son, Rob, an attorney licensed to practice law in California.

Which brings us to this, the third appeal in this litigation.  Rob was unwilling or unable to return the $250,000 his mother stole from the Dowling family trust and gave to him.  So Gregory filed a petition against him, seeking to recover under the Uniform Voidable Transactions Act, Civil Code section 3439 et seq., and Probate Code section 850 the $250,000 in gifts of trust assets Diane had given Rob.[1]  The probate court ruled for Gregory on both claims, and Rob appeals.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Diane Executes the Plan on Prescott*
In 2005 Prescott and his wife Ellen created a revocable trust naming Gregory and their other son, Richard, as beneficiaries.  Richard and Ellen amended the trust in 2009 (the

---

[1]    Undesignated statutory references are to the Probate Code.

3

2009 Trust), but maintained essentially the same distribution provisions.

Diane dated Richard in the 1990's, and she remained friends with the Dowlings. Ellen died in 2011. Richard died in 2012; upon his death, his share of the Dowling family trust went to Gregory.

In May 2012 Prescott paid over $300,000 to help pay off a promissory note secured by a deed of trust on the residential property Diane had inherited from Downen. Prescott referred to Diane as a "trusted" friend and like a sister. By 2014 Prescott was becoming increasingly angry with Gregory, and in 2015 Diane had an attorney prepare an amended trust (the 2015 Trust) that disinherited Gregory and his children and made Diane the sole beneficiary of the trust. (*Dowling I, supra*, B294046.)

Prescott died on June 21, 2016, and Diane became trustee and sole beneficiary under the 2015 Trust. Diane took $1.8 million in trust funds, put it in her personal account, and began to spend it. She went to the bank numerous times, both on her own and with Rob to assist her, and withdrew "'large sums of cash'" from trust accounts. Although she testified she could not remember how much she spent, she admitted she lost most of it gambling at the racetrack, stating at trial, "'I love gambling.'" She also apparently loved her son Rob: From November 2016 to August 2017 Diane gave Rob gifts totaling $250,000. In the end, Diane dissipated all but $750,000 of the $1.8 million in trust assets. (*Dowling II, supra*, B323346.)

Meanwhile, Rob "enjoyed himself immensely with the gifts he received from Diane." He bought a BMW, bought and sold (for a loss) a Chevrolet Corvette, and purchased 12 racehorses. Rob

4

too used trust money to gamble on horses at the racetrack. Diane's gifts to Rob "not only allowed him to spend time at the racetrack but also to step away from his law practice of over twelve years (in the area of criminal, personal injury and civil law) to focus on his newly funded racehorse enterprise." Rob testified that he has always liked racehorses and gambling, that "the time he spent investing in racehorses and gambling were the best times of his life," and that during this time period he stopped practicing law so he could enjoy his hobby of owning horses. He posted pictures of his horses on social media, as well as a picture of the Corvette, along with the words, "'I will never be late to court again, #corvette.'" Rob also posted pictures of the cars with messages or captions stating "'my new car for court,'" "'#money motivation for my C students at Southwestern Law,'" and "'Don't let the Profs get you down. I was in your shoes before, but look at what I drive today." In the end, Rob "consumed everything he received from Diane" (including $120,000 to $130,000 in prize money his racehorses earned). Rob testified that, except for the BMW, he gambled away or spent on horses all of the $250,000.[2] As the trial court found, "The trust estate was decimated by the combined actions of Diane and [Rob]."

B.    *Gregory Prevails on His Petition Against Diane*

In October 2016, one month before Diane began gifting Rob trust money, Gregory filed a petition under section 17200 to void

---

[2]    When asked if he was addicted to gambling, Rob testified: "I don't understand the question. I'll tell you that I never received treatment for addiction of gambling. I never sought treatment for addiction of gambling. I never lost a job or a client or ever been disciplined by the bar because of gambling. So I would say, no."

the 2015 trust on the grounds that Diane procured it through undue influence and that Prescott lacked the capacity in 2015 to amend the trust. Gregory sought an order distributing the trust assets pursuant to the 2009 Trust.

Following a court trial, the probate court in August 2018 declared the 2015 trust void, finding that Diane exercised undue influence and that Prescott lacked capacity. The court replaced Diane with Gregory as trustee and ordered him to administer the trust according to the terms of the 2009 trust documents. The court ordered Diane to return the trust assets she had taken (plus interest), transfer title to Prescott's residence to Gregory as the successor trustee of the trust, file an accounting as a constructive trustee, refrain from making any transfers that would impede the court's orders, and pay Gregory his attorneys' fees and costs. The court found that Diane committed financial elder abuse and that Gregory was entitled to attorneys' fees and costs under the elder abuse statutes. With one exception not relevant to this appeal, we affirmed the judgment. (*Dowling II, supra*, B323346.)

C.     *The Probate Court Orders Diane To Make Restitution*

On remand from *Dowling I* Diane never complied with the probate court's order for an accounting. Pursuant to the court's directions, Gregory as trustee filed a petition seeking restitution, compensatory damages, and interest from Diane. After additional proceedings in the probate court (including an unsuccessful special motion to strike under Code of Civil Procedure section 425.16 and an unsuccessful motion to disqualify the probate court judge), the court ultimately awarded

6

Gregory, as successor trustee of the trust, $1,293,138.27, plus $552,500 in interest.  (*Dowling II*, *supra*, B323346.)

D.      *Gregory Prevails on His Petition Against Rob*

All of which left the $250,000 in trust money Rob received from Diane and the BMW he purchased with that money.  In January 2022 Gregory as trustee filed a petition against Rob to recover the $250,000.  In his operative second amended petition Gregory asserted a cause of action to set aside the gifts Diane made to Rob as voidable transfers under the Uniform Voidable Transactions Act, Civil Code section 3439 et seq.  Gregory alleged Diane made the gifts to Rob "almost immediately after" Gregory filed his petition against Diane in October 2016 and without receiving any, let alone equivalent, value.

Gregory also asserted a cause of action under section 850, subdivision (a)(3)(B), for trust property held by another.  Gregory alleged Rob, knowing Gregory had filed his petition against Diane, used Diane's gifts of trust money to buy, among other things, two cars (the BMW and the Corvette) and 12 racehorses (Mudge, Templar, American Rhiannon, Sooner Time, Dahli a Azul, Street Moxie, Black Street Cat, Matty's Tribal, Zarqa Star, Voluntary, Empire Ruler, and Ree O Kerr).  Because Rob claimed he "now retains nothing sourced from his mother's gifts to him, except the . . . BMW," Gregory asked for an order requiring Rob to deliver to him as trustee the BMW and to repay the trust "the amount of cash necessary for total recovery of $250,000.00."  Gregory also requested a double-damages penalty (equal to twice the amount of property recovered) and attorneys' fees for bad faith taking of property under section 859.

7

On Gregory's cause of action under the Uniform Fraudulent Transactions Act, the probate court found Diane's transfers to her son "were textbook actions to hinder and delay" Gregory as a creditor, within the meaning of Civil Code section 3439. The court found most of the factors listed in Civil Code section 3439, subdivision (b), applied, including that the transfers were to an insider, namely, her son; that Diane retained possession and control of the money by keeping it in the family; that Diane and Rob concealed the gifts until she was deposed as part of Gregory's petition against her; that she made the gifts to Rob while Gregory's petition against her was pending; that Diane depleted substantially all of the trust assets, which "was part of a wholesale depletion of the trust estate"; and that Diane made the gifts to Rob shortly before the court adjudicated her a wrongdoer and she incurred a substantial debt. Rob does not challenge any of these findings. The court set aside Diane's transfers of $250,000 in gifts to Rob and imposed "liability against [Rob] in amount equal to the lesser of $250,000 and the amount necessary to satisfy the remaining amount of [Gregory's] judgment against Diane."

On Gregory's cause of action under section 850, subdivision (a)(3)(B), the probate court ruled that Rob had "no right to retain the trust property he received from Diane" and that Gregory was entitled to recover property Rob received from Diane while she was trustee. The court ordered Rob to deliver to Gregory the BMW and $235,000 in cash. The court also found Gregory was entitled to "a penalty of double the amount of property recovered," plus attorneys' fees and costs, under section 859 for bad faith conduct in wrongfully disposing of trust property. The court stated it had "no hesitation finding on this

8

record that [Rob's] disposition of trust property constituted wrongful bad faith conduct" in that he "went on a spending and gambling spree" knowing Gregory's petition against Diane "was pending and that if that action were successful" the 2015 trust would be invalidated and Rob "would face liability."[3]  The court found that Rob, as an attorney and "sophisticated person," "should have known better and undoubtedly did."  The court ordered Rob to pay, in addition to delivering the BMW and the $235,000, another $500,000 (twice the current value of the BMW ($15,000) and $235,000) under section 859, plus attorneys' fees and costs.

The trial court subsequently entered judgment on the first cause of action under the Uniform Fraudulent Transactions Act setting aside Diane's transfers of $250,000 to Rob and ordering Rob to pay Gregory as trustee $250,000, "said amount being less than the amount necessary to satisfy the remaining amount of [Gregory's] judgment against" Diane.  The court entered judgment on the second cause of action under section 850 ordering Rob to promptly deliver the BMW, "said BMW having been stipulated at trial to be worth $15,000.00—and $235,000.00 cash" and to pay $500,000 under section 859 for his "bad faith disposition of contested trust-estate funds," interest, and

---

[3]  Rob testified that he knew Gregory had filed a petition challenging the 2015 trust documents that left the entire estate to Diane, but that he did not believe Gregory had any chance of prevailing.  Rob stated that he knew he would have to return the $250,000 if Greg prevailed, but that he kept spending money on horses and gambling because he was not a party to the probate proceedings at that time.  Rob testified his position was:  "Make me a party if you want to sue me."

9

attorneys' fees and costs.  The judgment also provided that "[a]ny amount collected on this judgment (excluding the attorney fees and the penalty both of which are awarded per [section] 859) shall be applied to the amount otherwise due" Gregory on his judgments against Diane.  Rob timely appealed from the judgment.[4]

## DISCUSSION

Rob does not challenge any of the probate court's factual findings under the Uniform Fraudulent Transactions Act or sections 850 and 859.  Instead, he makes three legal arguments: (1) The remittitur after our decision in *Dowling II* precluded Gregory from filing a petition against Rob, (2) claim preclusion barred Gregory's petition against Rob, and (3) Rob's due process rights were violated because he did not receive formal notice of Gregory's petition against Diane.  We review all three issues de novo.  (See *Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859 ["Whether the trial court correctly interpreted our opinion is an issue of law subject to de novo review."]; *In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 538 [whether claim preclusion applies is a question of law we review de novo]; *Tafti v. County of Tulare* (2011) 198 Cal.App.4th 891, 896 [we independently review whether a party received adequate notice or due process].)

---

[4]     The probate court entered judgment on April 10, 2023.  On October 11, 2023 the probate court granted Gregory's unopposed motion for attorneys' fees and awarded Gregory as trustee $174,070 in fees.  Rob did not appeal from that order.

10

A.     *The Remittitur in* Dowling II *Did Not Preclude Gregory from Filing the Petition Against Rob*

Rob argues that, because this court's remittitur in *Dowling II* "only affirmed the judgment that ordered Diane to pay Gregory damages and restitution for funds spent from the Trust," the probate court "did not have jurisdiction to re-open the case and award damages or restitution against anyone other than Diane," such as Rob. Rob argues: "This Court's order in its Remittitur did not affirm nor award any damages to Gregory to be paid by Rob. Further, the Remittitur did not give Gregory a second chance to re-open the case to pursue Rob for damages or restitution. Accordingly, the trial court lacked jurisdiction to determine Gregory's petition for damages and penalties against Rob." Quoting *People v. Greene* (1887) 74 Cal. 400, at page 405, Rob says the judgment and order against him "are 'dead limb[s] upon the judicial tree, which should be lopped off' by this Court."

We rejected a similar argument in *Dowling II*, where Rob, representing Diane on appeal, argued the remittitur in *Dowling I* precluded the probate court from requiring Diane to make restitution of the money she stole from the trust. We cited the Supreme Court's statement in *Estate of Jenanyan* (1982) 31 Cal.3d 703 that the "probate of an estate consists of a series of procedures, from the initial appointment of an executor or administrator to the final distribution of the estate." (*Id.* at p. 708; see *Estate of Callnon* (1969) 70 Cal.2d 150, 156 ["'[t]he administration of a decedent's estate involves a series of separate proceedings, each of which is intended to be final'"]; *Dowling II, supra*, B323346.) Gregory's petition against Rob was another procedural step in the administration of the Dowling family trust and the recovery of trust assts. Gregory did not reopen the case

11

against Diane; he filed a new petition against Rob. (See Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2024) ¶ 15:585 [an action under section 850 "is commenced by filing a verified petition . . . with the court where the probate is pending"].)

Nor did the remittitur or our opinion in *Dowling II* preclude Gregory from suing to void a transfer of assets from Diane to Rob under the Uniform Fraudulent Transactions Act or from bringing a petition under Probate Court section 850 to recover trust assets from Rob (or anyone else who may be in possession of trust assets). The remittitur in *Dowling II* merely certified "that the attached is a true and correct copy of the original order, opinion or decision entered in the above-entitled cause on March 14, 2024 and that this order, opinion or decision has now become final. [¶] Gregory is to recover his costs on appeal." The disposition in *Dowling II* affirmed the probate court's July 12, 2022 order awarding Gregory $1,293,138.27 in restitution, plus $552,500 in interest, on his petition against Diane. There is nothing about Rob in either. Our decision in *Dowling II* resolved Diane's appeal from the probate court's order on Gregory's petition against Diane; we did not address or decide any issues regarding Rob. True, our decision in *Dowling II* did not authorize Gregory to file a petition against Rob, but it did not preclude Gregory from doing so either. And true, our opinion in *Dowling II* identified Rob as Diane's son and listed him as her attorney of record in the appeal. But it did not deprive the probate court of jurisdiction to rule on subsequent petitions by Gregory on behalf of the trust against Rob (or anyone else).

B. *Claim Preclusion Did Not Bar Gregory's Petition Against Rob*

Rob next argues: "Res judicata barred litigation between Gregory and Rob by the first judgment against Diane. Gregory sought relief for the same injury in the first action against Diane and second action against Rob, i.e., Diane spending money from the Trust. Rob was in privity with Diane as his liability was derivatively based on Diane's liability. And this Court's Remittitur on July 28, 2020 constituted a final judgment on the merits." According to Rob, "Gregory did not allege Diane and Rob acted in concert while Diane exerted undue influence over Prescott nor any allegation that Rob owed any duty to Prescott. Gregory contends Rob is solely liable because of Diane's acts as trustee. This is derivative liability. Accordingly, claim preclusion barred Gregory's lawsuit against Rob."

California courts "now refer to 'claim preclusion' rather than 'res judicata'" and "'issue preclusion' in place of 'direct or collateral estoppel.'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.)[5] "To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.'" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.) Claim preclusion applies "'only when "a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit."'" (*Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 323, italics omitted.)

---

[5] Rob does not argue issue preclusion barred Gregory's petition against him.

13

The determination whether claim preclusion applies "is made as of the date the first complaint is filed." (*Allied Fire Protection v. Diede Construction, Inc.* (2005) 127 Cal.App.4th 150, 155.) Thus, claim preclusion "is not a bar to claims that arise after the initial complaint is filed." (*Ibid.*; see *McCready v. Whorf* (2015) 235 Cal.App.4th 478, 482 [claim preclusion "is not a bar to claims that arise after the initial complaint was filed"].) "'The general rule that a judgment is conclusive as to matters that *could have been litigated "does not apply to new rights acquired pending the action* which might have been, but which were not, required to be litigated . . . .'"'" (*Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 514.)

Gregory's right to reclaim trust property from Rob did not arise until after he filed his petition against Diane. As discussed, Gregory filed his petition against Diane in October 2016, and Diane did not begin siphoning money from the trust to her son's pockets until November of that year. Claim preclusion did not apply to the claims in Gregory's petition against Rob. (See *Greenspan v. LADT, LLC, supra*, 191 Cal.App.4th at p. 514; *Allied Fire Protection v. Diede Construction, Inc., supra*, 127 Cal.App.4th at p. 155; see also *McCready v. Whorf, supra*, 235 Cal.App.4th at p. 482 [action to enforce a judgment "arose after the initial complaint was filed" and "quite obviously could not have been litigated in the first action"].)

Moreover, Gregory's causes of action in his petition against Diane involved a different primary right from those in his petition against Rob. Gregory's petition against Diane claimed that in 2015 Diane exerted undue influence to convince an elderly man who lacked testamentary capacity to dramatically change his estate plan and deprive his true heirs of their inheritance.

Gregory's petition against Rob claimed that in November 2016 Diane, having been sued by Gregory, made a series of gifts to her son to protect some of her ill-gotten gains from the reach of any judgment Gregory might obtain.  (Cf. *Fujifilm Corp. v. Yang* (2014) 223 Cal.App.4th 326, 332 ["because breaching a contract inflicts harm on a legally protected interest different from tortious conduct that renders uncollectable a judgment arising from the breach of contract, two different primary rights arise"]; *Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc.* (1994) 29 Cal.App.4th 1828, 1837 ["the right to have contractual obligations performed is distinct from the right to be free from tortious behavior preventing collection of a judgment"]; *Sawyer v. First City Financial Corp.* (1981) 124 Cal.App.3d 390, 402 [claim preclusion did not apply where the second action "reache[d] beyond" the documents at issue in the first action "to highlight other conduct of the parties alleged to be tortious," including a "sham foreclosure sale"].)  In essence, Gregory's petition against Rob was an action to enforce the judgment Gregory obtained against Diane, either as a fraudulent transfer under the Uniform Fraudulent Transactions Act or Probate Code provisions authorizing a trustee to recover property from third parties.  Claim preclusion does not apply in such a situation.

> C.    *The Probate Court Did Not Violate Rob's Due Process Rights*

Rob, who was not on the service list of Gregory's petition against Diane in October 2016, argues the probate court violated his due process rights because he "was an indispensable party to the action between Gregory and Diane.  Rob had a due process right to be heard in the trial between Gregory and Diane as his

right to possess the gift was derivatively based on Diane's rights under the Trust." Rob contends that his "possession of the cash gift from Diane triggered due process" and that, "[w]hen the gift was made, the 2015 Trust was still in effect without any court order that prohibited Diane from making any distributions from the Trust." Rob argues the judgment against him under the Uniform Fraudulent Transactions Act fails for the same reason.

The trial court properly rejected this argument. Putting aside that Rob was an attorney for his mother in the probate court proceedings, Gregory did not have to serve Rob with the petition he filed against Diane in October 2016. Probate Court section 17203, subdivision (b), provides that, "[a]t least 30 days before the time set for hearing on the petition, the petitioner shall cause notice of the hearing and a copy of the petition to be served . . . on any person, other than a trustee or beneficiary, whose right, title, or interest would be affected by the petition." (See *Colvis v. Binswanger* (2023) 96 Cal.App.5th 393, 397-398 ["the Legislature acknowledged persons other than trustees and beneficiaries could have rights or interests impacted by a trust petition and were thus entitled to notice, even though they cannot bring such petitions in the first instance"].) As the trial court recognized, the "first hearing on the 2016 Petition was held on December l5, 2016," which was before Gregory knew about Diane's gifts to Rob. Gregory did not learn Diane had been giving Rob trust money until Diane was deposed in September 2017. Thus, as the probate court correctly ruled, section 17203 did not require Gregory to serve Rob with the petition; Rob didn't have a right or interest in (stolen) trust assets yet. Moreover, Gregory's petition against Diane did not affect any right, title, or interest of Rob's. To the contrary, he accepted gifts from Diane after

16

Gregory filed the petition against her. If anything affected anything, Rob accepting cash gifts of trust money from his mother affected the prospects for success of Gregory's efforts to recover the trust assets Diane had taken.

Gregory did not violate the notice and service provisions of the Probate Code. Therefore, there was no violation of Rob's due process rights.[6]

## DISPOSITION

The judgment is affirmed. Gregory is to recover his costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.

---

[6] Rob does not separately challenge the penalty under section 859.